# Richmond.

## Seward and Company v. Miller & Higdon.

### December 6, 1906.

1. Carriers—*Bill of Lading—Written Order Changing Consignee.*—If a bill of lading expressly authorizes the carrier to deliver the goods upon the written order of the consignee without the bill of lading, such order, when given, has the same effect as the transfer of the bill of lading.

2. Carriers—*Bill of Lading—Assignment as Security—Title of Goods.*— A bill of lading confers upon the person to whom it is transferred the title to the goods; and this, although the transaction is not intended to give the permanent ownership, but to furnish security for advances of money, or discount of commercial paper made upon the faith of it.

3. Registry—*Assignee of Bill of Lading.*—A bank which discounts a draft with a bill of lading attached, if not the absolute owner of the goods, stands in the position of a mortgagee in possession, and is not required, in order to protect its lien, to have the papers recorded under section 2465 of the Code.

4. Carriers—*Bill of Lading—Assignment—Attachment—Subsequent Payment of Draft Attached to Bill of Lading.*—A consignee assigned a bill of lading to a purchaser, attached it to a draft on him for the price agreed, and had the draft discounted at bank. The purchaser, under a right reserved in the contract, refused to accept the goods after inspection. The agent of the consignee then sold to X, who agreed to pay the draft. The next day, and before the draft was paid, the goods were attached for a debt due by the consignee. Subsequently X paid the draft.

*Held:* The goods were not the property of the consignee at the time the attachment was levied. They belonged either to the bank or to X. If payments of the draft was an essential prerequisite to invest X with title, then they were the property of the bank; and if the agent of the consignee had no right to make sale to X, yet when the bank accepted payment of the draft from X, all its rights passed to him, and the attaching creditor had no greater right against him than it had against the bank.

5. ATTACHMENTS—*Estate of Debtor—Prior Liens.*—An attaching credi-
tor can acquire through his attachment no higher or greater
right to the property attached than the defendant had when the
attachment was levied, unless he can show fraud or collusion
by which his rights are impaired. If property, when attached,
is subject to a lien placed thereon by the defendant in good
faith, that lien must be respected, and the attachment post-
poned to it.

6. INSTRUCTIONS—*Evidence to Support.*—Instructions should not be
given where there is no evidence on which to base them.

Error to a judgment of the Corporation Court of the city of
Roanoke in an action of assumpsit, with ancillary attachment
into which plaintiff in error intervened. To an adverse judg-
ment the intervening claimant of the property assigns error.

*Reversed.*

The opinion states the case.

*Smith & King,* for the plaintiff in error.

*Robertson, Hall* and *Woods,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the Court.

The defendants in error instituted an action of assumpsit
against the California Fruit Agency and California Citrus
Union on March 25, 1904, and on the same day sued out an
attachment and had it levied on two carloads of oranges stand-
ing on the tracks of the Norfolk & Western Railway Company
in Roanoke city. Seward & Company, the plaintiff in error,
a single individual, filed his petition in that action, claiming
that he was the owner of the attached property. Upon issues
made up to try the question of whether or not Seward & Com-
pany owned the property attached or had an interest therein or a
lien thereon there was a verdict in favor of Miller & Higdon,
the plaintiffs in the action of assumpsit and defendants in the
issues submitted to the jury. Seward moved the court to set

aside that verdict. The court sustained the motion in part and set it aside so far as it found that the plaintiff in error was not the owner of the oranges in car No. 4825, and granted a new trial as to the ownership of that car, but overruled the motion as to the other car, No. 3539. To that judgment of the court this writ of error was awarded.

The action of the court in giving instructions numbered 2 and 5 is assigned as error. The objection made to these instructions is that there was no evidence in the case upon which to base them. Another error assigned is to the refusal of the court to set aside the verdict of the jury as to car No. 3539, because the verdict as to that car, as well as to the other car, was without evidence to support it. These assignments of error may be considered together.

It appears from the uncontradicted evidence in the case that car No. 3539 was shipped from the state of California on the 7th of March, 1904, by the California Citrus Union to the California Fruit Agency, whose agent lived in Richmond; that he sold the oranges in that car to T. S. Wright, a dealer in Roanoke, and, while the car was in transit from California to St. Louis, in the state of Missouri, directed that it be diverted and carried to Roanoke, Va.; that on the 16th day of that month the said agent drew a draft on Wright for the sum of $384.00, the price of the oranges, and attached an order on the Norfolk & Western Railway Company to the draft, directing that company to deliver that car of oranges to Wright on the payment of the freight and all other charges; that on the next day the draft, with the said order attached, was transferred to the Planters National Bank of Richmond, and discounted by it, and the proceeds placed to the credit of the California Fruit Agency; that upon the arrival of the car at Roanoke, on the 24th of that month, the purchaser, Wright, who had the privilege of examining the oranges and rejecting them if they failed to come up to representations, did make an examination and refuse to take the oranges, and so notified the agent of the California Fruit Agency; that the

agent, who was then in Roanoke, called up Seward, who resided in Baltimore, in the state of Maryland, over the long-distance telephone, and after explaining to him the condition and quality of the oranges and Wright's refusal to take them, sold them to Seward, who agreed to pay the draft on Wright which had been discounted and was held by the Planters National Bank; that on the next day, the 25th of the month, the defendants sued out their attachment and had it levied on the oranges, but Seward did not pay the draft on Wright until after the attachment was levied; and that the bill of lading expressly authorized the carrier to deliver the car upon the written order of the California Fruit Agency, without the bill of lading.  ·

When the Planters National Bank discounted the draft on Wright, to which was attached the written order of the California Fruit Agency to the Norfolk & Western Railway Company to deliver the car to Wright upon the payment of freight and all other charges, the bank became the owner of the oranges until payment of the draft; for a bill of lading confers upon the person to whom it is transferred the title to the goods, and this, although the transaction is not intended to give the permanent ownership but to furnish security for advances of money or discount of commercial paper made upon the faith of it. *Dows* v. *National Bank*, 91 U. S. 618, 23 L. Ed. 214; *Bank* v. *Logan*, 74 N. Y. 568; 1 Benjamin on Sales (6th Am. Ed.), sec. 577. The written order to the carrier to deliver had the same effect, under the facts of this case, as if the bill of lading itself had been attached to the draft. *Conrad* v. *Atlantic Ins. Co.*, 1 Peters 386, 446-447, 7 L. Ed. 189.

The endorsement and delivery of a bill of lading to a bank as collateral security for paper discounted not only invests the bank with title to the goods but operates as a delivery of the goods, and the bank in such a case, if not the absolute owner, stands in the position of a mortgagee in possession, and is not required, in order to protect its lien, to have the papers recorded under section 2455 of the code, as the trial court seemed

to think was necessary when it gave the defendants' instruction No. 2. *First Natl. Bank* v. *Kelly,* 57 N. Y. 34.

When the attachment was levied the oranges were not the property of the California Fruit Agency. They were either the property of the Planters National Bank or of the plaintiff in error. If the payment of the draft by Seward was necessary to invest him with title to the oranges then the bank was their owner when the attachment was levied. If it be conceded that the agent of the California Fruit Agency had no authority to sell the oranges to Seward, because they were no longer the property of his company, yet when the bank accepted payment of the draft from Seward all its rights passed to him, and the attaching creditors had no greater rights against the oranges in his hands than they would have had against them if they had remained the property of the bank.

It is a well settled principle of law that an attaching creditor can acquire through his attachment no higher or greater rights to the property or assets attached than the defendants had *when the attachment was levied,* unless he can show fraud or collusion by which his rights are impaired. If the property when attached is subject to a lien *bona fide* placed upon it by the defendant that lien must be respected and the attachment postponed to it. Drake on Attachments, section 223.

There is no suggestion that the Planters National Bank did not discount the draft on Wright and acquire its rights in perfect good faith; nor is there any evidence that Seward in purchasing the oranges and in paying the draft was guilty of any fraud.

We are of opinion that the verdict of the jury was without evidence to support it, and that the court erred in not setting it aside as to both cars of oranges. This being so, it is unnecessary to consider the question raised by another assignment of error, whether or not, if the evidence had sustained the verdict of the jury as to the one car and not as to the other, the court

had the right to set aside the verdict as to one car and sustain it as to the other.

It also follows from what has been said that instructions Nos. 2 and 5 ought not to have been given, as there was no evidence upon which to base them.

We are of opinion that the judgment complained of should be reversed, the verdict of the jury set aside, and a new trial granted, to be had not in conflict with the views expressed in this opinion.

*Reversed.*