# Wytheville.

## THE CITIZENS AND MARINE BANK OF NEWPORT NEWS v. L. A. McMURRAN, RECEIVER OF COLONIAL STATE BANK OF NEWPORT NEWS.

### June 12, 1924.

1. BILLS, NOTES AND CHECKS—*Endorsement—Endorser as Surety—Change in the Contract.*—An endorser of a note is a surety for the maker, and any change in the contract, however immaterial, even though it be to his advantage, discharges the surety, if made without his consent. Thus, if a bank guarantee or become surety for the payment of a $10,000.00 note at the expiration of fifteen days, or at its maturity, the action of the holder of the note in renewing the note for $9,000.00, without the knowledge or consent of the bank, discharges it from such liability.

2. BANKS AND BANKING—*Cashier—Cashier's Authority in General.*—In order for a cashier to bind his bank by his acts, the acts done must be within his express or implied powers, or within his inherent powers.

3. BANKS AND BANKING—*Cashier—Cashier's Authority in General.*—Where a cashier, without authority from the board of directors, exercises an authority usually and customarily exercised by cashiers, and the bank receives the benefit of the act, it cannot deny the authority of the cashier and escape liability.

4. BANKS AND BANKING—*Cashier—Authority of Cashier—Case at Bar.*—The Colonial State Bank desiring to extend the line of credit of a customer asked the Citizens and Marine Bank if it would take over a note of this customer. This the Citizens and Marine Bank agreed to do, and it was alleged on behalf of the Citizens and Marine Bank that the cashier of the Colonial State Bank agreed to take up this note again in fifteen days. This was denied by the cashier, and it is uncontradicted that the cashier was never authorized to make an oral arrangement of this kind. The customer's note was never endorsed by the Colonial State Bank, and without the knowledge or consent of the Colonial State Bank or its cashier the Citizens and Marine Bank accepted renewal notes.

    *Held:* That the promise to take up the note if made by the cashier of the Colonial State Bank was without consideration, and not within his express, implied or inherent powers.

5. Pledge and Collateral Security—*What Indebtedness Covered Collateral Security—Case at Bar.*—In the instant case the Colonial State Bank borrowed $25,000.00 from the Citizens and Marine Bank and gave its own note with a number of its customers' notes as collateral security. The collateral note given by the Colonial State Bank included a provision to the effect that "the liability and indebtedness hereby secured and intended to be secured includes that of maker, endorser, acceptor, surety, or guarantor, for others, as well as for the undersigned or either of them."

*Held:* That these words were never intended to include the promise without consideration of the cashier of the Colonial State Bank to repurchase paper from the Citizens and Marine Bank. Nor was a clause in the agreement that upon the nonpayment of any of the liabilities, or in event of insolvency, the liabilities should become immediately due, intended to cover the breach of such an agreement.

6. Appeal and Error—*Conflicting Evidence—Findings of Court.*—Under section 6363 of the Code, when a case is tried by the judge without a jury, and conflicts arise in the testimony, or inferences to be drawn therefrom, the judgment of the trial court should not be set aside, unless it appear from the evidence that it is plainly wrong, or without evidence to support it.

Error to a judgment of the Corporation Court of the city of Newport News, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*R. M. Lett* and *George Bryan*, for the plaintiff in error.

*Nelms, Colonna & McMurran* and *J. Winston Read*, for the defendant in error.

West, J., delivered the opinion of the court.

This is a writ of error to a judgment against the Citizens and Marine Bank of Newport News, Virginia, in favor of L. A. McMurran, receiver of the Colonial State Bank, for the sum of $8,000.00, with interest and costs.

In September, 1918, the Colonial State Bank discounted a note of W. E. Vassar, for $10,000.00, payable six months after date to R. D. Holloway and by him endorsed, to which was attached as collateral 100 shares of the capital stock of Vassar-Abbott Company, Incorporated, of the par value of $10,000.00, deducting the discount thereon for the six months period to the maturity of the note in March, 1919.

Early in December, 1918, Holloway, or Vassar, applied for an additional loan.  Their line of credit at the Colonial Bank being near the limit, it was suggested that if some other bank in the city could handle the $10,000.00 note, upon which both Holloway and Vassar were liable, a further line of credit at the Colonial Bank would be open to them.  Pursuant to the suggestion, F. R. Bartlette, cashier of the Colonial State Bank, saw W. B. Vest, president of Citizens and Marine Bank, and asked him if his bank would handle this note, telling him that his reason for making the request was to reduce the lines of both parties at the Colonial, and to get this note out of its bills receivable.

President Vest agreed that his bank would handle the note.

The note was presented to the Citizens and Marine Bank, with the unearned discount from the day of presentment to the maturity of the note in March, 1919, and the Colonial was given credit on its deposit account with the Citizens and Marine Bank for the full sum of $10,000.00.

Upon the maturity of the Vassar note in March, 1919, a curtail of $1,000.00 was accepted by the Citizens and Marine Bank and the note renewed for $9,000.00 for a period of six months; and upon maturity of the $9,000.00 note in September, 1919, a further curtail of $1,000.00 was made, and the note renewed

for $8,000.00 for six months, maturing in March, 1920. Upon neither the original note nor any of the renewals was the Colonial Bank in any way liable, by way of endorsement or other written evidence of liability.

In the fall of 1919, the Colonial State Bank borrowed considerable money from other banks, including $25,-000.00 from the Citizens and Marine Bank. For the $25,000.00 the Colonial gave its own note, with a number of its customers' notes as collateral security for the payment of the same. When the Colonial was placed in the hands of the receiver, on February 12, 1920, it had paid a curtail of $5,000.00 on this note, and on September 10, 1919, had renewed the note for $20,-000.00.

The note of the Colonial, given for the money borrowed, contains the usual provisions of such notes, including a provision that the collateral notes put up are given as security for the payment of that or any other indebtedness, or liability of the Colonial State Bank to the Citizens and Marine Bank due, or to become due, or which may thereafter be contracted or existing against the Colonial State Bank, and to be a continuing agreement between the banks. It further provides that the liability and indebtedness secured shall include that of maker, endorser, acceptor, surety or guarantor for others, as well as those made to or with the bank, or for the direct benefit of the bank.

The Citizens and Marine Bank collected a large number of the collateral notes after the Colonial was placed in the hands of the receiver, and on April 1, 1920, paid itself out of the proceeds the balance of $20,000.00, due upon the $25,000.00 loan; and, claiming the right so to do under the terms of the note given for the $20,000.00, deducted from the amount collected on the collateral notes the sum of $8,000.00 on account of

an alleged liability of the Colonial upon the note of W. E. Vassar, endorsed by R. D. Holloway, above mentioned, and remitted to the receiver of the Colonial a balance of $2,410.18, and returned to him the uncollected collateral notes.

In June, 1920, McMurran, receiver of the Colonial State Bank, instituted this action against the Citizens and Marine Bank to recover the $8,000.00 retained by it and applied to the payment of the W. E. Vassar note for that amount.

The defense urged by the Citizens and Marine Bank is that the Colonial State Bank promised and agreed to pay the Vassar note, and that therefore his note for $8,000.00 was a "liability" of the Colonial State Bank, within the meaning of its $20,000.00 collateral note of September 10, 1919.

The case was heard by the court without a jury, and the action of the court in entering judgment against the defendant is assigned as error.

Cashier Bartlette, of the Colonial, and President Vest, of the Citizens and Marine Bank, are the only witnesses as to what transpired between them at the time the note was taken over by the latter bank in 1918. Bartlette testified that his object in asking Vest to handle the paper, and that he so stated to Vest, was to reduce the Holloway-Vassar line with his bank, and that he never intended at any time to create any liability upon the Colonial Bank. It is admitted that Vest did not ask Bartlette to have his bank endorse the note or guarantee its payment in writing, and that the books of neither bank contain any entry showing any liability of the Colonial State Bank to the Citizens and Marine Bank on account of this transaction. It is true that Vest testified that when Bartlette asked him to handle the note, he said: "I want you to carry ten

thousand dollars of Holloway's paper for me about fifteen days, at which time I will take it up;" but Bartlette testified: "I made no promise to take it up in fifteen days." Besides, it is agreed that the Citizens and Marine collected the unearned discount on the note for about ninety days, to its maturity, instead of for fifteen days. When the note fell due, instead of demanding payment, the Citizens and Marine Bank, without the knowledge or consent of Bartlette, or the Colonial Bank, collected a curtail of $1,000.00 and accepted a renewal note for $9,000.00, payable six months after date. When the $9,000.00 note matured, the bank collected another curtail of $1,000.00, and accepted a renewal note for $8,000.00, payable six months after date.

[1] The plaintiff in error has failed to show that the Colonial State Bank assumed any liability at the time the note was taken over by the Citizens and Marine Bank. If, as contended by plaintiff in error, the Colonial did guarantee or become surety for the payment of the $10,000.00 note at the expiration of the fifteen days, or at its maturity, the action of the Citizens and Marine Bank in renewing the note for $9,000.00, without the knowledge or consent of Bartlette, or the Colonial State Bank, discharged it from such liability. At this time Holloway was regarded by the banks as solvent and worthy of credit for $10,000.00. Besides, the note was supported by Vassar's name and $10,000.00 of the stock of Vassar-Abbott Company, which was solvent.

In the case of *Dey, Receiver,* v. *Martin,* 78 Va. 1, the court said: "An endorser of a note is a surety for the maker; and the doctrine is well established that any change in the contract, however immaterial, and even though it be for his advantage, discharges the surety, if made without his consent."

It is uncontradicted that cashier Bartlette was never authorized to make oral agreements of the kind plaintiff in error is attempting to sustain in this case. At the time the note was renewed for $8,000.00, there was no existing liability upon the Colonial Bank, and if Bartlette promised to take up this note there was no consideration for the promise upon which to create a new liability. Neither the implied nor the inherent powers of a cashier by virtue of his office, authorize him, without consideration, to bind his bank by a verbal executory contract.

[2] In order for a cashier to bind his bank by his acts, the acts done must be within his express or implied powers, or within his inherent powers. Moore on Banks and Banking (5th ed.), sec. 171.

[3] It is true, as shown by the authorities relied on by the plaintiff in error, that where a cashier, without authority from the board of directors, exercises an authority usually and customarily exercised by cashiers, and the bank receives the benefit of the act, it cannot deny the authority of the cashier and escape liability. *Davenport* v. *Stone*, 104 Mich. 521, 62 N. W. 722, 53 Am. St. Rep. 467, and other cases cited in brief of defendant in error.

[4] The promise of Bartlette, without consideration, if made, to take up the $8,000.00 note, was unusual and not customary with banks in Newport News, was not approved by his board of directors, and cannot be said to be within his express, implied or inherent powers.

[5] The agreement in the $20,000.00 collateral note contained these words: "The liability and indebtedness hereby secured and intended to be secured includes that of maker, endorser, acceptor, surety, or guarantor, for others, as well as for the undersigned or either of them."

The agreement further provides that "upon the non-payment of any of the above mentioned liabilities, or in the event of the insolvency of, or the appointment of such assignee, or trustee, for the benefit of the creditors of, the undersigned, or of the guarantor or endorsers, if any, this note and any or all of the aforesaid liabilities shall at the option of the said bank become immediately due," etc.

The words as used in the first above quotation were never intended to include the promise without consideration of the cashier, if made, to repurchase paper. Nor was the last clause quoted intended to cover the breach of such an agreement, even where it is clearly established.

It follows that the title to the notes held by the plaintiff in error as collateral for the $20,000.00 obligation passed to the receiver immediately upon his appointment, subject only to the rights therein given; and that the Citizens and Marine Bank had no right to apply the amounts collected on these notes to the payment of the $8,000.00 note.

[6] Under section 6363 of the Code, when a case is tried by the judge without a jury, and conflicts arise in the testimony, or inferences to be drawn therefrom, the judgment of the trial court should not be set aside, unless it appear from the evidence that it is plainly wrong, or without evidence to support it.

The case has been fairly tried upon the merits, and there is evidence to support the judgment.

*Affirmed.*