Sy `abus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

# J. H. ROUNTREE, TRADING AS ROUNTREE-HOLLAND & COMPANY v. JOHN F. GRAHAM.

## January 14, 1926.

1. SALES—*F. O. B.*—*Definition*—*When Title Passes.*—The general rule is that a sale f. o. b. cars means that the subject of the sale is to be placed on the cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer and the property be wholly at his risk, in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage in transitu.

2. SALES—*F. O. B.*—*When Title Passes*—*Rule Subordinate to the Intention of the Parties.*—The operation of the general rule, that in f. o. b. shipments title passes as soon as the goods are placed on the cars, however, is subordinate to the intention of the parties, and if it appears from the terms of the contract of sale or from a preponderance of the proof, where the contract is silent, that it was not the intention of the parties to pass title f. o. b. to the consignee, then the rule is not applicable.

3. SALES—*F. O. B.*—*When Title Passes*—*Bill of Lading in Name of Seller*—*Goods Consigned to the Order of Shipper.*—A strong presumption in favor of the retention of title by the seller arises in a case where the bill of lading is taken in the name of the vendor and the goods are actually consigned to the order of the shipper. This presumption may be rebutted by circumstances and by proof of previous dealings of the parties which evidence a contrary intention.

4. SALES—*F. O. B.*—*When Title Passes*—*Case at Bar.*—In the instant case, an action of assumpsit by the seller of a carload of peaches, which the purchaser refused to accept, the fact that the seller shipped to his own order or that inspection was allowed the buyer, was not of itself determinative of the question of when title passed, but that question must be determined by the intention of the parties.

5. SALES—*F. O. B.*—*When Title Passes*—*Goods Consigned to Seller*—*Draft Attached to the Bill of Lading*—*Case at Bar.*—In the instant case, an action of assumpsit by seller against the purchaser of a carload of peaches, the order for the carload of peaches contained no specifications. The peaches were actually consigned to the order of the

seller and the bill of lading was attached to a sight draft drawn on the purchaser, the defendant. The purchaser was granted the privilege of inspection. The defendant refused to accept the peaches on account of their defective condition. From the correspondence between the plaintiff and the broker who gave the order for the carload of peaches, who from the evidence appeared to have been acting as plaintiff's agent, it appeared that it was the intention of plaintiff to retain title to the peaches.

*Held:* That a verdict and judgment for plaintiff for the difference between the contract price and the price obtained upon resale should be set aside, and judgment entered for defendant.

6. AGENCY—*Evidence to Establish Relationship—Case at Bar.*—In the instant case, an action of assumpsit by the seller of a carload of peaches against the purchaser who refused to accept them, correspondence between the broker who ordered the peaches for defendant and plaintiff, together with the broker's testimony that he was the agent of plaintiff, was sufficient to establish the relationship of principal and agent between plaintiff and the broker.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action for assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. L. Devany, Jr.* and *Wolcott, Wolcott & Lankford,* for the plaintiff in error.

*James E. Heath,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This was an action of assumpsit by the defendant in error, plaintiff in the trial court, against the plaintiff in error, defendant, to recover the sum of $643.40, the balance of the purchase price for a car of peaches shipped to Norfolk.

"This case was jointly tried upon the same evidence and instructions as the case of *John F. Graham* v. *E. P.*

*Godwin, trading as R. S. Godwin & Company,* to which judgment this court granted a writ of error and supersedeas on the —— day of January, 1925." (Record, page 2.)

The pertinent facts are as follows: On September 28, 1923, the plaintiff, a resident of Wilson, New York, received from Kemp E. Savage, a broker doing business in Norfolk, the following telegram: "Ship Rountree-Holland positively to-day minimum car only best Elbertas, dollar sixty-five. Confirm."

This order was accepted by the plaintiff by telegram, and on the same day the plaintiff shipped a car containing three hundred and sixty-nine bushels of peaches to his own order, with instructions to carrier to notify defendant and to permit inspection. · The bill of lading with draft attached was sent to the Norfolk National Bank. The defendant, upon inspection, refused to accept the peaches, on account of their alleged defective condition and the manner of packing not conforming to the descriptive word "ring-tail," which is descriptive of a class of peaches and the mode of packing.

Upon the refusal of the defendant to accept the peaches, they were disposed of by Savage, the broker. The net price obtained, after paying the freight and the expense of sale, was $17.05, leaving a balance alleged to be due of $643.40, for which sum a judgment was obtained by the plaintiff.

The theory of the plaintiff is that the contract is a New York contract, by reason of the plaintiff's acceptance of the defendant's offer on September 28th, and by reason of the further fact that the peaches were to be shipped f. o. b. Wilson, New York.

The position of the defendant is, that title did not pass upon the delivery of the peaches to the carrier, but remained in the plaintiff, as evidenced by the fact

that they were shipped consigned to the plaintiff's own order, with instructions to notify defendant and to permit an inspection of the car before payment of the draft with bill of lading attached, thus manifesting an intention upon the part of the plaintiff to retain title.

[1] The general rule is that "A sale f. o. b. cars means that the subject of the sale is to be placed on the cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer and the property be wholly at his risk, in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage in *transitu*." *Lawson* v. *Hobbs*, 120 Va. 690, 91 S. E. 750; *Geoghegan* v. *Arbuckle Bros.*, 139 Va. 92, 123 S. E. 387, 36 A. L. R. 399.

[2] The operation of this general rule is, however, subordinate to the intention of the parties, and if it appears from the terms of the contract of sale or from a preponderance of the proof, where the contract is silent, that it was not the intention of the parties to pass title f. o. b. to the consignee, then the rule is not applicable.

[3] A strong presumption in favor of the retention of title by the seller arises in a case where the bill of lading is taken in the name of the vendor and the goods are actually consigned to the order of the shipper. This presumption may be rebutted by circumstances and by proof of previous dealings of the parties which evidence a contrary intention.

In *Greenwood Grocery Co.* v. *Canadian County Mill Co.*, 72 S. C. 450, 52 S. E. 192, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261, Judge Woods said: "The fact that the bill of lading is taken, mak-

ing the goods deliverable to the order of the vendor, who is himself the consignor, is very strong *prima facie* evidence that the vendor, in delivering the goods to the carrier, intended to reserve the title until payment of the purchase money, and when a draft for the price is drawn on the purchaser with such bill of lading attached, the title does not ordinarily pass to him until the draft is paid." See authorities cited.

In 35 Cyc. 333, note (d), it is said: "If where there is a consignment to the seller, his agent, or order, the bill of lading is forwarded to the seller's agent with draft attached, to be delivered to the buyer on payment, the seller thereby manifests an intention to reserve the property in the goods, and the property does not pass until the draft is paid. And even when the buyer is named as consignee, if the bill of lading with draft attached is sent to the seller's agent or bank for collection, the property in the goods is reserved and does not pass to the buyer until payment."

In *Dawes, et als.* v. *National Ex. Bank*, 91 U. S. 631, 23 L. Ed. 214, it appears that wheat was purchased for the account of Smith & Co., and shipped in Smith & Co.'s boats, with bill of lading in the name of the consignor as consignee, with draft attached. The court in that case held: "These bills of lading, unexplained, are almost conclusive proof of an intention to reserve to the shipper the *jus disponendi* and to prevent the title to the wheat from passing to the drawers of the drafts."

[4] The fact that the seller shipped to his own order, or that inspection was allowed the buyer, is not of itself determinative of the question of title; we must look for guidance to the question of intention.

[5, 6] To take the instant case out of the general rule, plaintiff places great reliance upon the case of

*Standard Casing Co.* v. *California Casing Co.,* 223 N. Y. 413, 135 N. E. 834. In that case, it appears that the place of shipment was San Francisco, and that delivery was to be f. o. b. there. The court held that, notwithstanding the fact that the goods were shipped to the order of the vendor, with bill of lading attached to sight draft, and inspection allowed, the contract was a California contract. An examination of this case reveals, however, that it is not out of harmony with the weight of authority as to the general rule. In the opinion it is said: "The general rule is that, upon a sale 'f. o. b. the point of shipment,' title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk. Williston, Sales, section 280, page 409; *U. S.* v. *R. P. Andrews & Co.,* 207 U. S. 229, 241, 28 Sup. Ct. 100, 52 L. Ed. 185; *Detroit Sou. R. Co.* v. *Malcomson,* 144 Mich. 172, 107 N. W. 915, 115 Am. St. Rep. 390. *The operation of the rule is, of course, subordinate to intention. We find nothing in this contract by which an inconsistent intention is adequately revealed.* The plaintiff sees in two provisions the tokens of a purpose that arrival at the point of destination shall be a condition of performance. One is the provision that after arrival at New York, the buyer may inspect. The other is that, subject to *such* inspection, payment shall be made on presentation of a draft with bill of lading attached. We think that each is conclusive." (Italics supplied.)

Having determined what we conceive to be the law of the case, we come now to a discussion of the facts.

The telegraphic order, *supra,* contained no specifications. The intention of the parties must be gathered from their conduct. As stated, the peaches were actually consigned to the order of the plaintiff, and the

bill of lading was attached to a sight draft drawn on the purchaser. The defendant was granted the privilege of inspection. Upon the refusal of the defendant to accept the peaches, on account of their defective condition, the following correspondence by wire took place between the plaintiff and Savage, the broker:

"JOHN F. GRAHAM, Burt, N. Y.

"Sawyer arrived fruit alright but evidently improperly loaded appears might lose twenty-five baskets then again loss may be nothing will give matter personal attention Sawyer will handle you agree protect quote lowest another car shipment this week rush.

"KEMP E. SAVAGE."

"KEMP E. SAVAGE, Norfolk, Va.

"Sawyer car properly loaded when left must be due rough handling protect by claim offer car to-day shipment one sixty-five.

"JOHN F. GRAHAM."

"JOHN F. GRAHAM, Burt, N. Y.

"Car 142528 has not been accepted Godwin will refuse unless you meet demands submitted by broker.

"B. G. VINCENT."

"KEMP SAVAGE, Norfolk, Va.

"Your written order filled correct by State inspection why don't *you resell will hold you*. (Italics ours.)

"JOHN F. GRAHAM."

"JOHN F. GRAHAM, Burt, N. Y.

"Much surprised your message had tried resell before wiring you was not my fault that you were away unless release Godwin quick today and agree settle sixty-five

·cents basket allowance will be rejected outright and loss will be much greater this final stop Rountree car here top layer badly over-ripe and decayed unable tell condition lower layer unable get offer from anyone but Sawyer Godwin agrees take car if wire bank release quick today and get all possible out of same have done very best for you on both cars and advise you do as I say immediately unless want larger loss.

"KEMP E. SAVAGE."

"JOHN F. GRAHAM, Burt, N. Y.     Oct. 6, 1923.

"No one arrived yet unless do something immediately think railway will sell for freight *I strongly advise you release both cars to me immediately to-day* and will have them handled to very best advantage am only trying save you all I can answer quick.     (Italics ours.)

"KEMP E. SAVAGE."

"Burt, N. Y., Oct. 6, 1923.

"KEMP E. SAVAGE, Norfolk, Va.

"Re your last wire releasing to you today both Godwin and Rountree cars through general freight agent N. Y. C. lines handle to best advantage.

"JOHN F. GRAHAM."

That Savage was the agent of the plaintiff we think the proof shows. Savage testified that he was the agent of the plaintiff, and taken in connection with the other facts and circumstances, it is demonstrated to our satisfaction that he was such agent. That it was the intention of the plaintiff to retain title we think is clearly shown by the correspondence.

While it is true that there are cases where title is reserved for the purpose only of securing the purchase

money, we are of the opinion that the instant case does not fall within that class. Were this case one involving the respective rights of the plaintiff and an attaching creditor of the defendant, we would have no hesitation in holding that the title to the peaches was in the plaintiff.

In *Seward & Co.* v. *Miller & Higdon,* 106 Va. 331, 55 S. E. 681, it appears that a car of oranges was shipped to the California Fruit Agency at Richmond. While car was in transit the oranges were sold to Wright, at Roanoke. The Agency notified Norfolk & Western Railway to deliver them to Wright upon payment of the draft attached to notice. The notice and draft were discounted at a Richmond bank. The purchaser refused to accept oranges for cause. They were then sold to the plaintiff upon payment of the draft held by the bank. Before the draft was paid the oranges were attached by creditors of the original purchaser, Wright. The court held that the paper title attached to the draft carried title to the oranges and Wright had no interest therein.

For the reasons stated, the verdict and judgment will be set aside and a final judgment entered here in favor of the plaintiff in error, defendant in the trial court.

*Reversed.*