# Richmond.

## C. B. UPDIKE AND J. A. POLLARD, TRADING UNDER THE FIRM NAME OF SERVICE GARAGE v. THE TEXAS COMPANY.

January 20, 1927.

1. HANDWRITING—*Expert Testimony—Banker—Case at Bar.*—The instant case was an action of an oil company for gasoline sold and delivered to a partnership. Plaintiff asserted that part of the gasoline sold was represented by an unpaid check for $1,530.00, signed by the partnership, payable to the company, and part by a receipt signed by the partnership. Defendants asserted that the check and receipt were not given for gasoline received but merely to enable the company's agent to square his accounts in anticipation of an expected examination by the company's auditor and that the agent of the company gave one of the partners his check for $1,530.00 to serve as a memorandum of the transaction. The agent of the company testified that his alleged check was a forgery.

   *Held:* That the court erred in refusing to allow an expert witness, a banker, to compare the signature alleged to be a forgery with the admitted signatures of the agent, and to state whether the disputed signature was genuine.

2. EVIDENCE—*Exclusion of Evidence—Expected Answer of Witness not Given—Harmless Error—Case at Bar.*—In the instant case the court erroneously refused to allow an expert witness to compare a disputed signature with admittedly genuine signatures and to testify as to the genuiness of the disputed signature, but it nowhere appeared in the record what the witness would have said about the signature had he been allowed to testify. His testimony might have been adverse to the party who intoduced him as a witness. Besides the jurors had before them the signatures admited to be genuine and the alleged forged signature and could themselves compare the signatures.

   *Held:* That under all the circumstances it could not be said that the error was prejudicial.

3. SALES—*Instructions—Conflicting Evidence—Disputed Signature of Plaintiff's Agent—Case at Bar.*—The instant case was an action of an oil company for gasoline sold and delivered to a partnership. Plaintiff asserted that part of the gasoline sold was represented by an unpaid check for $1,530.00, signed by the partnership, payable to the com-

pany, and part by a receipt signed by the partnership. Defendants asserted that the check and receipt were not given for gasoline received but merely to enable the company's agent to square his accounts in anticipation of an expected examination by the company's auditor, and that the agent of the company gave one of the partners his check for $1,530.00 to serve as a memorandum of the transaction. The agent of the company testified that his alleged check was a forgery. The court instructed the jury that if they believed that the gasoline represented by the partnership's check and receipt was received by the partnership and not paid for, they should find for the plaintiff regardless of whether the disputed check of plaintiff's agent was forged or not.

*Held:* That this instruction was manifestly correct.

4. APPEAL AND ERROR—*New Trial—Conflicting Evidence—Section 6363 of the Code of 1919.*—On an assignment of error to the refusal of the court to set aside the verdict of the jury because "contrary to the evidence," the plaintiff in error, under section 6363 of the Code of 1919, is before the Supreme Court of Appeals practically as on a demurrer to the evidence and the burden is on him to show that the verdict is contrary to the evidence, or without evidence to support it.

5. SALES—*New Trial—Conflicting Evidence—Case at Bar.*—In the instant case, an action for gasoline sold, the evidence was conflicting. Plaintiff asserted that the sale of the gasoline in question was represented by a check and receipt signed by the buyers, whereas defendants asserted that the check and receipt were not given in settlement for gasoline received but merely to enable plaintiff's agent to cover up a shortage in his accounts in view of an expected examination by the plaintiff's auditor, and that plaintiff's agent gave them a check as a memorandum of the transaction. Plaintiff's agent denied this and asserted that his signature to the last mentioned check was a forgery. A representative of the plaintiff, when defendant's check was not paid, sought an interview with them and testified that one of them admitted the check represented an actual debt. He also testified that after he had talked with this defendant, the defendant made a ticket for the gasoline represented by the receipt and signed it at the agent's request. Employees of defendants testified that after a conference between plaintiff's agent and one of the defendants, the defendants showed them the disputed check signed by the agent.

*Held:* That as the evidence was conflicting a verdict for the jury in favor of plaintiff could not be set aside, as the verdict was not plainly wrong, contrary to the evidence, or without evidence to support it.

6. QUESTIONS OF LAW AND FACT—*Weight of Evidence—Credibility of Witnesses.*—The credibility of the witnesses and the weight of the evidence are always questions for the jury.

Error to a judgment of the Corporation Court of the city of Lynchburg, in an action of assumpsit.

Judgment for plaintiff.

Defendants assign error.

*Affirmed.*

The opinion states the case.

*Landon Lowry, S. V. Kempe* and *S. S. Lambeth, Jr.,* for the plaintiffs in error.

*Nelson Sale,* for defendants.

West, J., delivered the opinion of the court.

The Texas Company recovered a judgment against the plaintiffs in error in the sum of $2,087.25, for gasoline sold and delivered to them, and this is a writ of error to that judgment.

The parties will be referred to as plaintiff and defendants, with respect to their positions in the trial court, or as the Service Garage and The Texas Company.

This suit was first instituted in the Circuit Court of Bedford county, and after two trials, each of which resulted in a hung jury, the case was removed to the Corporation Court of the city of Lynchburg, where the judgment for $2,087.25 was entered.

The account sued on was for gasoline, as follows:

2,229 gallons of gasoline @ 25c per gallon, $    557.25
6,000 gallons of gasoline @ 25½c per gallon,   1,530.00

the latter item being represented by a check for that amount, signed by Service Garage, by Roy D. Updike, and payable to The Texas Company.

G. B. Updike and J. A. Pollard, trading under the firm name of Service Garage, were engaged in the sale of

gasoline and oil and in the sale and repair of automobiles in the town of Bedford, Virginia. Neither of them lived in the town, or participated in the conduct of the business. Roy D. Updike, son of G. B. Updike, was general manager and had complete authority over and general charge of the business. Service Garage owned a storage tank which held only 550 gallons of gasoline.

R. W. Wilkes was the only representative of The Texas Company in the town of Bedford. He drove the company's delivery truck which supplied gasoline and oil to the people of the town and to a portion of those in the county of Bedford. He received his supply of gasoline from the company's 20,000 gallon storage tank in the town of Bedford. Whenever he delivered gasoline to a customer he was required to take a receipt in triplicate, one copy of which went to the company, one to the customer, and the other was retained by him. He was charged with all gasoline put into the storage tank and credited with all cash and delivery receipts which he sent to the company.

R. B. Wilkes, testifying for the plaintiff, says he had been making deliveries of gasoline to the Service Garage on a credit, at intervals, for some time and that the check for $1,530.00 sued on was for 6,000 gallons of gasoline so delivered by him; and that the receipt for 2,229 gallons of gasoline sued on was for several smaller quantities sold on a credit and delivered by him on other occasions.

Roy D. Updike, testifying for the defendants, says the Service Garage owed The Texas Company nothing; that Wilkes had been behind in his accounts with his company for some time, and had borrowed from him divers sums of money on sundry occasions to cover his shortage; that Wilkes would pay the sums borrowed by deliveries of gasoline; that later Wilkes told him the auditor was coming around to check him up and that

to square his accounts he would need a check for $1,530 for 6,000 gallons and a receipt for 2,229 gallons, and that he gave him the receipt and check upon his agreeing to pay the same in gasoline or cash before the check, which had been sent to Norfolk, would be presented for payment; that as evidence of good faith Wilkes "gave to Updike his check for $1,530, with no expectation that it would be cashed, but merely to serve as a memorandum of the transaction pending the raising of the money by Wilkes whereby the $1,530 check given him by Updike was to be paid on its return by The Texas Company for payment in due course."

The foregoing statement of facts and of the evidence of Roy D. Updike and R. B. Wilkes is taken from the petition of plaintiffs in error and almost in the language of the petition, and is admitted by the defendant in error to be in accord with the record.

[1, 2] The first assignment of error is to the action of the court in refusing to allow Giles Miller to "compare the signatures of Wilkes to the receipts in the record, which he admitted to be genuine, with the signature of his name to the check which Wilkes testified was not his signature, and to state to the jury whether in his opinion the disputed signature was genuine."

Miller testified that he had been in the banking business for thirty years, and was then vice-president and cashier of the Lynchburg National Bank, and that his occupation required him to "scrutinize handwritings."

Under the decision of this court in *Adams* v. *Ristine*, 138 Va. 273, 122 S. E. 126, 31 A. L. R. 1413, we are of the opinion that the court erred in not allowing Miller to testify. It nowhere appears in the record, however, what the witness would have said about the signature had he been allowed to testify. It may be that his

testimony would have been adverse to the party who introduced him as a witness. Besides the jurors had before them the signatures admitted to be genuine and the alleged forged signatures and could themselves compare the signatures. Under all the circumstances, we cannot say the error was prejudicial.

Petitioners waived the second assignment of error at the bar of this court.

[3] The third assignment of error is the action of the court in giving instruction No. 2, as follows:

"The court instructs the jury that if you believe from the evidence in this case that the gasoline represented by Exhibit No. 1, the ticket for 6,000 gallons of gasoline, and the check for $1,530.00 dated September 30, 1922; and the written receipt dated October 13, 1922, for 2,229 gallons of gas at the price of $557.25 was received by the Service Garage, and that said Service Garage *was* not paid for such gasoline, then you should find for the plaintiff in the sum of $1,530.00 with interest from September 30, 1922, and in the further sum of $557.25 with interest from October 13, 1922; and this is true regardless of whether Roy B. Updike held the genuine check of R. B. Wilkes for $1,530 or whether the check of R. B. Wilkes for $1,530 was forged."

This instruction presents the case to the jury in a nut shell. It is so manifestly correct as to leave no room for argument. It tells the jury in simple language that if they believe from the evidence that Service Garage received the gasoline at the prices named and had not paid for it, The Texas Company was entitled to a verdict. If the jury found the facts to be as stated in the instruction, it was their *duty* to find for the plaintiff, regardless of what they thought of the testimony of any particular witness or witnesses.

This brings us to the last assignment of error which

challenges the court's refusal to set aside the verdict of the jury "because contrary to the evidence."

[4] Defendants are here practically as on a demurrer to the evidence and the burden is on them to show that the verdict is contrary to the evidence, or without evidence to support it.

The law which guides the court in disposing of such motions is found in section 6363 of the Code, and reads as follows:

"When a case at law, civil or criminal, is tried by a jury and a party excepts to the judgment or action of the court in granting or refusing to grant a new trial on a motion to set aside the verdict of a jury on the ground that it is contrary to the evidence, or when a case at law is decided by a court or judge without the intervention of a jury and a party excepts to the decision on the ground that it is contrary to the evidence, and the evidence (not the facts) is certified, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."

R. B. Wilkes testified that the $1,530 check, signed Service Garage, by Roy D. Updike, was given him in settlement for 6,000 gallons, and the receipt in settlement for 2,229 gallons of gasoline, which he had prior thereto sold and delivered to the Service Garage, in sundry instalments, on a credit. Wilkes also testified that the check for $1,530, payable to the order of Roy D. Updike and held by Updike, to which his (Wilkes') name is attached, is a forgery. There is evidence that Service Garage was allowing its checks to be returned unpaid during the time that Wilkes says he was selling them gasoline on a credit.

The check for $1,530 was not paid, and the Texas Company sent it to L. L. Breeden, its representative in

Roanoke, for collection.   He went to Bedford to see
Updike and try to get him to pay the check.   He testi-
fied that Updike admitted that the check represented
an actual debt and told him he did not have the money
to pay it, and when Breeden suggested that he get his
father and his uncle to endorse for him, he said he did
not want them to know anything about it.   He also
testified that after he had talked to Updike about the
check, Wilkes made out a ticket for the 2,229 gallons of
gasoline and Updike signed it at Wilkes' request and
gave it to Wilkes.

Roy D. Updike admits that he signed the check for
$1,530 and the receipt for the 2,229 gallons of gasoline,
but testified that they did not owe The Texas Company
anything, and that he signed the receipt and check to
enable Wilkes to settle with his company, upon Wilkes'
promise that he would raise the money and pay the
check when it reached the Bedford bank upon which it
was drawn, and would make deliveries of gasoline to
cover the receipt for the 2,229 gallons of gasoline.   He
further testifies that Wilkes' signature to the check for
$1,530 is genuine.

Paul and Warren Dooley, who were employed by
Service Garage, testifying for the defendants, say
Wilkes came to the garage to see Updike, that they went
back into the rear of the garage and after a conference
Wilkes went out and Updike came into the office and
showed them the check for $1,530, signed by R. B.
Wilkes.

Counsel for the parties have each analyzed the evi-
dence and discussed it in the briefs at length and with
great ability, plaintiff's counsel endeavoring to show
that the verdict is fully supported by the evidence, and
defendants' counsel endeavoring to show that it is con-
trary to the evidence.

[5, 6] Both sides admit that there is a direct conflict in the evidence relied upon by them, and that the veracity of R. B. Wilkes and Roy D. Updike is necessarily put in issue. In view of this situation, nothing could be gained by prolonging this opinion in a further discussion of the evidence. The credibility of the witnesses and the weight of the evidence are always questions for the jury. After a careful consideration of the evidence, we cannot say the verdict is plainly wrong, contrary to the evidence, or without evidence to support it. Regardless of what conclusions the members of this court might have reached if they had served as jurors in the case, we feel it our duty, under the law, to accept the verdict of the jury as binding upon us, and to affirm the judgment.

*Affirmed.*