## Richmond.

# BIRDSONG AND COMPANY, INC. v. AMERICAN PEANUT CORPORATION.

### March 1, 1928.

### Absent, McLemore, J.

1. APPEAL AND ERROR—*Case Submitted to the Judgment of the Court—Reversal—Section 6363 of the Code of 1919—Case at Bar.*—In the instant case, an action by seller against buyer for purchase price, there was a judgment for plaintiff. Upon the trial of the case a jury was waived and all matters of law and evidence were submitted to the judgment of the court. It was assigned as error that the judgment was contrary to the law and the evidence and without evidence to support it. Under such circumstances the appellate court is governed by the provisions of section 6363 of the Code of 1919, providing that the judgment shall not be set aside unless plainly wrong or without evidence to support it. Under these circumstances, according to the settled principles relative to the application of section 6363 of the Code of 1919, in the event of conflicts in the evidence or in inferences to be drawn therefrom, the evidence for the plaintiff or fair inferences therefrom must prevail.

2. APPEAL AND ERROR—*Assignment of Error that the Judgment is Contrary to the Law and the Evidence or Without Evidence to Support it—Case on Appeal Practically as on a Demurrer to the Evidence.*—In an action by seller against buyer for the purchase price of the goods, heard by the court without a jury, where there is a judgment for plaintiff and defendant assigns as error that the judgment is contrary to the law and the evidence or without evidence to support it, the case on appeal is practically as on a demurrer to the evidence, and the burden is on the defendant to show that the judgment is contrary to the evidence or without evidence to support it.

3. SALES—*Executory Contract of Sale—Action for Purchase Price where Title has not Passed.*—It is a recognized general rule of the law of sales that when the contract is executory and the buyer repudiates the contract and in consequence refuses to accept the goods, whether before or after attempted delivery, at a time when according to the intention gathered from the contract between the parties the title

and right to possession had not passed to the buyer—then the seller is relegated to his action for damages and cannot sue for and recover the full purchase price.

4. SALES—*Executory Contract of Sale—Action for Purchase Price where Title has not Passed.*—The seller is not permitted to force the title or ownership of the goods upon the buyer, contrary to the terms of the contract, so as to enable him to sue for the purchase money, although the buyer has repudiated the contract and refuses to abide by its terms and purchase the goods.

5. SALES—*When Title Passes—Intention Governs.*—The true doctrine is that the intention of the parties as to when the title passes must govern. This intention may appear from the express terms of a formal contract, or may be gathered from all the circumstances constituting the contract or surrounding its completion.

6. SALES—*When Title Passes—F. O. B. Sales.*—A sale f. o. b. cars means that the subject of the sale is to be placed on the cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer and the property be wholly at his risk, in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage *in transitu.*

7. SALES—*When Title Passes—Bill of Lading to Order of Seller Attached to a Draft on the Buyer.*—The fact that the bill of lading is to the order of the seller, and attached to a draft on the buyer, is strong evidence that the seller intended to reserve the title and that it does not pass to the buyer.

8. SALES—*When Title Passes—Goods Shipped Seller to his Own Order—Inspection Allowed Buyer.*—The fact that the seller shipped to his own order, or that inspection was allowed the buyer, is not of itself determinative of the question of title; it is still a question of intention.

9. CONTRACTS—*Executory Contracts—Completed by one Party.*—An executory contract may become completed by one party, so as to entitle him to require compliance by the other party, either by doing what he agreed to do, or by acquiescence of the parties.

10. SALES—*When Title Passes—Purchaser Claiming that Goods were not up to Grade—Submission of Question to Arbitrators who Decided in Favor of Seller—Case at Bar.*—The instant case was an action by seller against buyer for the purchase price of the goods sold. The subject of the sale was a carload of peanuts, which the buyer directed defendant to deliver to its agent in Chicago, where the buyer had a purchaser for the peanuts. Accordingly the seller shipped the carload to Chicago, under uniform order bill of lading to the shipper's order, notify buyer's agent, inspection allowed. When the car reached Chicago the sub-purchaser refused to receive the peanuts

on the ground that they were not up to grade.  Buyer's agent notified buyer, who communicated with seller, and buyer and seller agreed to submit to arbitration the question of whether or not the peanuts were up to grade.  The arbitrators decided in favor of seller.

*Held:* That this was an agreement between the parties that the title and ownership should pass to the buyer in the event the decision of the arbitrators should be that the peanuts came up to the requirements of the purchase, and upon the decision of the arbitrators in its favor, seller could maintain its action for the purchase price.

11.  SALES—*When Title Passes—Purchaser Claiming that Goods were not up to Grade—Submission of Question to Arbitrators who Decided in Favor of Seller—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade.  The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade.  The arbitrators decided in favor of the seller.

*Held:* That the buyer had not repudiated the contract; hence no right of action for damages accrued to the seller, and there was no abandonment of the contract by the seller, and good faith required that the parties should abide by the decision of the arbitrators.

12.  SALES—*When Title Passes—Purchaser Claiming that Goods were not up to Grade—Submission of Question to Arbitrators who Decided in Favor of Seller—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade.  The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade.  This was equivalent to an understanding that the buyer stood ready to pay the purchase money, if the peanuts came up to grade.  He did not rescind the contract but kept it in force, so that if the decision of the arbitrators were against him, he was in the position of having finally accepted the goods as of the time of their tender by the carrier.

13.  SALES—*Action by Seller for Purchase Price—Parties Submitting to Arbitrators the Question of Whether the Subject of the Sale was of the Character and Quality called for—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade.  The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade.  The vital question in the case was whether the peanuts shipped

were of the character and quality which the plaintiff was under obligation to ship. Upon the finding by the arbitrators that the seller had complied with this obligation, the trial court was justified in holding that complete substantial performance of the contract had been made by the seller, and he was entitled to the purchase money.

14. SALES—*Action by Seller for Purchase Price—Parties Submitting to Arbitrators the Question of Whether the Subject of the Sale were of the Character and Quality called for—Seller Ordering Goods Stored—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade. The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade. When the arbitration was agreed upon and no decision was rendered at once, the seller, when called upon by the railroad agent at the point of delivery, had the peanuts stored to the account of "whom it may concern" to await the result of the arbitration. The purchaser when informed of the decision of the arbitration in favor of the seller sent a check to the bank to take up the draft with the bill of lading attached, and was told by the bank that it surrendered the bill of lading to the railroad in order that the goods might be stored. The purchaser contended that as he could not get possession of the goods, and as plaintiff had thus exercised control over them, ownership never passed to the buyer, and liability for the purchase money had not accrued.

*Held:* That the trial court did not err in finding that the seller acted reasonably in ordering the storage of the goods, and that the storage effected no change in the *status quo,* but preserved the rights of the parties, and that upon the finding of the arbitrators in favor of the seller, the storage company was in constructive possession of the goods for the purchaser.

15. SALES—*When Title Passes—Purchaser Claiming that Goods were not up to Grade—Submission of Question to Arbitrators who Decided in Favor of Seller—Admissibility in Evidence of Signed Copy of the Decision of the Arbitrators—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade. The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade. It was assigned as error that the court erred in admitting in evidence a signed copy of the decision of the arbitrators. The conduct of both parties showed that this arbitration was merely an arrangement for the

final inspection of the goods, and it is not to be judged by the technical rules applicable to a formal arbitration and award.

*Held:*  That considering the admissions made and agreements arrived at in the presence of the court, together with the evidence as to the document, the court did not err in allowing it in evidence.

16.  SALES—*Purchaser Claiming that Goods were not up to Grade—Submission of Question to Arbitrators who Decided in Favor of Seller—Loss from Failure of Sub-Purchaser to Accept Goods—Case at Bar.*—In the instant case, an action by seller against purchaser for the purchase price of a carload of peanuts, a sub-purchaser declined to receive the peanuts on the ground that they were not up to grade.  The purchaser notified the seller and the parties agreed to submit to arbitration the question of whether the peanuts were or were not up to grade.  Defendant assigned as error the refusal of the court to permit it to prove a loss claimed to have occurred from the failure of the sub-purchaser from it to accept the goods at a price in excess of that it was to pay the plaintiff.

*Held:*  That the agreement on the part of the defendant to abide by the inspection of the arbitrators was a waiver of this claim, so far as it affected the plaintiff.  In any event, the evidence became immaterial by the finding of the court for the plaintiff.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of assumpsit. Judgment for plaintiff.  Defendant assigns error.

*Affirmed.*

The opinion states the case.

*James H. Corbitt,* for the plaintiff in error.

*John N. Sebrell,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The American Peanut Corporation procured a judgment in the trial court against Birdsong and Company, Incorporated, in an action of assumpsit, for $2,198.21, being the purchase price of goods sold to the defendant

by the plaintiff. This judgment is before us for review on a writ of error awarded upon the petition of the defendant in the case, Birdsong and Company, Incorporated.

There are three assignments of error.

[1, 2] We will consider first an assignment that the judgment is "contrary to the law and the evidence and without evidence to support it." Upon the trial of the case, a jury was waived and all matters of law and evidence were submitted to the judgment of the court Under such circumstances we are governed by the provisions of section 6363 of the Code of Virginia. According to the settled principles relative to the application of this statute, in the event of conflicts in the evidence or in inferences to be drawn therefrom, the evidence for the plaintiff or fair inferences therefrom must prevail. The case is here practically as on a demurrer to the evidence, and the burden is on the defendant to show that the judgment is contrary to the evidence or without evidence to support it. Burks Pl. & Prac. (2nd ed.) 564; *Updike* v. *Texas Company,* 147 Va. 208, 136 S. E. 591; *Norfolk and Western Railway Company* v. *Thayer,* 137 Va. 294, 119 S. E. 107; *Citizens Bank* v. *McMurran,* 138 Va. 657, 123 S. E. 507.

The plaintiff, the American Peanut Corporation, claimed a right to recover of the defendant, Birdsong and Company, the amount sued for as the purchase price of a carload of peanuts alleged to have been sold to the defendant. The place of business of the plaintiff was in the city of Norfolk, Virginia, and that of the defendant in the city of Philadelphia.

On the 29th day of August, 1924, Birdsong had a conversation over the long distance telephone with an officer of the plaintiff. It was then agreed that the defendant would buy from the plaintiff five carloads

of No. 2 Virginia shelled peanuts at seven and three-quarters cents per pound, to be "as good as any other shipper," that is to be as good as any standard grade of No. 2 Virginia shelled. An exchange of letters followed from which it appears that the peanuts were to be shipped during September and October, in "scattered shipments" as ordered by the buyers, f. o. b. shipping point (Norfolk), to be paid for on sight draft with bill of lading attached, inspection to be allowed at point of delivery.

The first four carloads were shipped and received, there having been a complaint by the buyer as to the grade of the fourth carload, the contention concerning which was settled by arbitration. This litigation arose over the last carload shipped. This carload was under sale by the buyer to parties in Chicago, to whom the sale had been negotiated for Birdsong and Company by one Sudler their agent or broker at the latter place. Consequently Birdsong and Company instructed the seller at Norfolk to ship this last carload lot to Chicago on a bill of lading, "order notify" Sudler. Thereupon the seller, on October 21, 1924, shipped this carload to Chicago, under uniform order bill of lading to the shipper's order, notify Oscar M. Sudler, inspection allowed. The seller then at once forwarded its sight draft on the buyer, with the bill of lading attached, to be paid at the Corn Exchange National Bank in Philadelphia. Upon the arrival of the carload in Chicago, the goods were rejected by Birdsong's sub-purchaser at that place upon the ground that they were not up to grade. Birdsong was notified of this rejection by a telegram or night letter from Sudler received on the morning of October 28th. He at once wired the Peanut Corporation that the car of peanuts was "off quality" and rejected. Then ensued a telephone interview between

the parties and an exchange of telegrams, the final result of which was that they agreed upon an arbitration, which was confirmed by letters. As stated in a letter of that date from the defendant to the plaintiff, "We presume you want to handle this the same as the last, and have wired you to name your Chicago arbitrator. In the event this rejection is sustained we will then talk at what price we can take the goods in. We certainly are exceedingly sorry that the goods did not come up to what we bought but if the arbitration states that the goods are in line with the way we bought them from you, we will pay the full invoice price." A notice of the arrival of the draft was sent to the buyer by the Philadelphia bank on October 23rd, and the buyer was awaiting inspection and then arbitration before paying for the goods.

The agreement to arbitrate was practically verbal and informal, and was to the effect that it should be had as in the instance of the arbitration concerning the fourth carload, in which L. S. Nachman was selected by the defendant, and J. B. Roberts by the plaintiff. The same two parties were notified and proceeded to inspect the peanuts and pass upon the right of rejection, the files of each party relating to the purchase and sale having been delivered to the arbitrators. Because of the absence of Mr. Nachman from Chicago, the inspection and decision of the arbitrators could not be made till November 5th. Apparently the decision was communicated to the parties on November 6th. On the afternoon of that day Sudler informed the defendant that the arbitration had been decided against it. The conclusion of the arbitrators was as follows:

"Chicago, Nov. 5, 1924.

"We the arbitrators selected in the controversy between the American Peanut Corporation, Norfolk,

Va., and Birdsong & Co., Philadelphia, Pa.   Mr. J. B.
Roberts represented American Peanut Corporation and
Mr. L. S. Nachman represented Birdsong & Co.

"After due reflection decided to call in a third arbi-
trator, Mr. H. H. Hart, to settle certain differences,
and we find as follows:

"In the absence of a signed contract, arbitrators were
compelled to use correspondence which passed between
buyer and seller, as a means of determining basis of
sale.

"After careful consideration we find in favor of the
seller, and agree that the tender of No. 2 Virginia
shelled peanuts constitutes a good delivery.

"Respectively signed

"J. B. ROBERTS,<br>
"L. S. NACHMAN,<br>
"H. H. HART."

In the meantime, on October 31st, Wells, the agent of
the delivering carrier at Chicago, called on the plaintiff
by wire to "advise disposition" of the car as it had
been rejected.   In reply the plaintiff wired to have the
peanuts delivered to the Monarch Refrigerating Com-
pany, if not accepted by Sudler, and instructed the
bank in Philadelphia to deliver the bill of lading to the
carrier for that purpose.   This disposition of the pea-
nuts was made, according to plaintiff's testimony, to
await the decision of the arbitrators and save demur-
rage.   Sudler knew of this storing of the peanuts, and
the plaintiff company having directed the bill of lading
to be turned over to the carrier, expected defendant to
send them check for the purchase price, when the
arbitrators decided the dispute.

On November 7th the defendant company in Phila-
delphia sent a check to the bank there for the amount
of the draft, together with the notice of October 23rd

from the bank calling for payment. The bank returned the papers with an endorsement that the bill of lading had been delivered to the carrier upon the order of the plaintiff.

The defendant took no further steps toward payment. According to the plaintiff's evidence they were expecting a check for the amount of the invoice, and finally on November 17th wrote to Birdsong and Company as follows:

"November 17, 1924.

"BIRDSONG AND COMPANY,
        "Philadelphia, Pa.

"GENTLEMEN:

"We call your attention to invoice of October 21st— $2,198.21 covering car peanuts shipped to Oscar M. Sudler, Chicago, Ill., which was arbitrated and decided in our favor; we have not received remittance covering this car. Please let us have your check by return mail covering same, and also favor us with more good business.

"The shelled market is stronger this morning, and indications are for continued firmness from information we have from the south.

"We await business from you on all grades.

            "Very truly yours,
            "AMERICAN PEANUT CORPORATION."

To this the defendant, on November 18th, replied:

"Philadelphia, Nov. 18, 1924.

"AMERICAN PEANUT CORP.,
        "Norfolk, Va.

"GENTLEMEN:

"Your letter of the 17th received relative to your invoice of October 21st. Now, as soon as we heard result of the arbitration we sent our check up to the Corn Exchange Bank here, who advised that you had

ordered the papers returned, or some other disposition
made of them, and we, therefore, cannot understand
your letter.   Where is the B/L?

> "Yours very truly,
> "BIRDSONG AND COMPANY, INC."

The plaintiff then wrote on November 19th:

> "November 19, 1924.
>
> ·"MESSRS. BIRDSONG AND CO., INC.,
> "Philadelphia, Pa.
>
> "GENTLEMEN:
>
> "We have yours of the 18th.
>
> "We had a wire from Mr. R. O. Wells stating that
> the car was rejected and advise disposition, and we
> wired R. O. Wells to have this car delivered to the
> Monarch Refrigerating Company if not accepted by
> Sudler, and the bill of lading was sent to R. O. Wells.
> So, they have the bill of lading now, and the car was
> unloaded to save demurrage charges.   So we think
> this will straighten this matter out alright, and you
> can send us check.
>
> "We hope this will be satisfactory, and also hope to
> have more nice business from you in the near future.
> Thinking that there might be some hitch about this,
> we are enclosing you letter addressed to the Monarch
> Refrigerating Company asking them to deliver the
> car to you.
>
> "Very truly yours,
> "AMERICAN PEANUT CORPORATION."

The defendant continuing in its refusal to make pay-
ment, a correspondence between the parties followed
which was without result.

[3, 4] It is insisted by learned counsel for the defend-
ant that the agreement between the parties was an
executory contract of sale and that this action for the
purchase money cannot be maintained, upon the ground

that the title and ownership of the goods had not passed to the buyer, and, therefore, the remedy of the seller was confined to an action for damages.  It is a recognized general rule of the law of sales that when the contract is executory as is the fact in the instant case, and the buyer repudiates the contract and · in consequence refuses to accept the goods, whether before or after attempted delivery, at a time when according to the intention gathered from the contract between the parties the title and right to possession had not passed to the buyer—then the seller is relegated to his action for damages and cannot sue for and recover the full purchase price.  The seller is not permitted to force the title or ownership of the goods upon the buyer, contrary to the terms of the contract, so as to enable him to sue for the purchase money, although the buyer has repudiated the contract and refuses to abide by its terms and purchase the goods.

[5] The true doctrine is that the intention of the parties as to when the title passes must govern.  This intention may appear from the express terms of a formal contract, or may be gathered from all the circumstances constituting the contract or surrounding its completion.  *Ellis* v. *Hubard*, 123 Va. 481, 96 S. E. 754; *Montauk Company* v. *Daigger*, 141 Va. 686, 126 S. E. 681.

In the instant case there are three points in the contract and dealings of the parties, dwelt upon by counsel, having material bearing upon this question of intention of the parties.  The goods were shipped f. o. b. at Norfolk, the place of delivery to the carrier; the seller drew a draft upon the buyer with bill of lading attached; inspection was allowed at point of destination.

[6] A sale f. o. b. cars means that the subject of the sale is to be placed on the cars for shipment without

any expense or act on the part of the buyer, and that
as soon as so placed the title is to pass absolutely to
the buyer and the property be wholly at his risk, in
the absence of any circumstances indicating a retention
of such control by the seller as security for purchase
money, by preserving the right of stoppage *in transitu.*

[7] The fact that the bill of lading is to the order of
the seller, and attached to a draft on the buyer, is strong
·evidence that the seller intended to reserve the title
and that it does not pass to the buyer.

[8] The fact that the seller shipped to his own order,
or that inspection was allowed the buyer, is not of
itself determinative of the question of title; we must
look for guidance to the question of intention.

These general principles are accepted in Virginia.
*Geoghegan Sons & Co.* v. *Arbuckle Bros.*, 139 Va. 92,
123 S. E. 387, 36 A. L. R. 399; *Rountree* v. *Graham*, 144
Va. 145, 131 S. E. 193; *Rosenbaum Hardware Co.* v.
*Paxton*, 124 Va. 346, 97 S. E. 784.

We cannot agree, however, that these general rules of
law, as argued for by the defendant, furnish a solution
·of the exact question presented in the instant case.
Numerous cases show that their proper application
under varying circumstances has proved exceedingly
·difficult.

[9] An executory contract may become completed by
·one party, so as to entitle him to require compliance
by the other party, either by doing what he agreed to
do, or by acquiescence of the parties.

[10–12] In the instant case, the effect of what was
done by the parties when the shipment was completed
and acceptance refused by Birdsong's purchaser, was
to agree that the title and ownership should pass to the
buyer in the event the decision of the arbitrators, on
the sole question remaining open, should be that the

peanuts came up to the requirements of the purchase. Good faith required that the parties should abide by the decision of the arbitrators. The buyer had not repudiated the contract, hence no right of action for damages accrued to the seller. There was no abandonment of the contract by the seller. It is not necessary to decide whether in the event the buyer had finally and absolutely refused to accept the peanuts at Chicago solely upon the ground that on inspection they did not come up to grade, and, therefore, declined to pay the purchase money, the seller could claim complete performance on his part and sue for the purchase money, and recover upon proof that the peanuts were of the grade contracted for; though it would be scarcely logical to hold that the buyer could reply that the title did not pass to him because he had not paid the purchase price. What the parties did was equivalent to an understanding that the buyer stood ready to pay the purchase money, if the peanuts came up to grade. He did not rescind the contract but kept it in force, so that if the decision of the arbitrators were against him, he was in a position of having finally accepted the goods as of the time of their tender by the carrier.

[13] There was considerable evidence on the trial, in addition to the outline of the case we have given above. Doubtless the facts and inferences from all the evidence, just above recited, were in the mind of the learned trial judge, and whether or not they necessarily follow from the evidence, we are unable to say that they are not supported by the evidence. The vital question in the case was whether the peanuts shipped were of the character and quality which the plaintiff was under obligation to ship. Upon the finding by the arbitrators that the seller had complied

with this obligation, the trial court was justified in holding that complete substantial performance of the contract had been made by the seller, and he was entitled to the purchase money. *Harrild* v. *Spokane School Dist.*, 112 Wash. 266, 192 Pac. 1, 19 A. L. R. 811, 815.

[14] It is further insisted on behalf of the defendant that the defendant evinced his readiness to pay the purchase price, when informed of the decision of the arbitrators, by sending a check to the bank on November 7th to take up the draft with the bill of lading attached, and as he was then told that the bill of lading had been surrendered to the railroad company in order that the goods might be stored with the Monarch Refrigerating Company, he could not get possession of the goods, and as the plaintiff had thus exercised control over them, ownership never passed to the buyer, and liability for the purchase money had not accrued. One difficulty the parties to the contract encountered in dealing with each other arose from the fact that the seller was in Norfolk, the buyer in Philadelphia, and the goods upon instruction were shipped to Sudler in Chicago as the buyer's receiving agent. The trial court evidently concluded that when the arbitration was agreed upon, and no decision was rendered at once, the seller acted reasonably, when called upon by the Chicago railroad agent, in having the peanuts stored with the Monarch Refrigerating Company to the account of "whom it may concern" to await the result of the arbitration. This must have been known to Sudler in Chicago.

We are unable to hold that the trial court erred in finding from the evidence that the seller acted reasonably under the circumstances, and that what was done effected no change in the *status quo*, but preserved the

rights of the parties, so that upon the decision of the arbitrators, the acceptance of the goods and liability for the amount of the invoice became final, leaving the storage company to turn over the goods accordingly. The railroad company and the storage company were in constructive possession of the goods for the purchaser should the arbitrators find for the seller.

The withdrawal of the draft when not paid, and the placing of the bill of lading with the railroad company, was not, under the circumstances, unnatural, nor a breach of any of the terms of the contract of sale.

The assignment of error based upon the exception to the conclusions and judgment of the trial court cannot by sustained.

[15] It is further assigned as error that the court erred in admitting in evidence the signed copy of the decision of the arbitrators. Several colloquies of considerable length occurred in the presence of the court between learned counsel for the two parties to this controversy, and considering the admissions made and agreements arrived at in the presence of the court, together with the evidence as to this document, we are of opinion that the court did not err in allowing it in evidence for consideration by the court. The conduct of both parties show that this arbitration was merely an arrangement for the final inspection of the goods, and is not to be judged by the technical rules applicable to a formal arbitration and award.

[16] A third assignment is based upon the refusal of the court to permit Mr. Birdsong to prove a loss claimed to have occurred from the failure of the Chicago purchaser from him to accept the goods at a price in excess of that he was to pay the American Peanut Corporation. The agreement on the part of the defendant to abide by the inspection of the arbitrators was a waiver of

this claim, so far as affected the plaintiff.   In any event, the evidence became immaterial by the finding of the court for the plaintiff.

Upon the whole case we are of opinion that the plaintiff in error, the defendant in the lower court, has not shown any error in the judgment justifying this court in disturbing the judgment, and it is therefore affirmed.

*Affirmed.*