# Richmond.

## L. M. WILLIAMS, BERKELEY WILLIAMS AND E. L. BEMISS, TRADING AS JOHN L. WILLIAMS AND SONS,

### v.

## MELENDEZ, GANO AND FAYE.

March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

SALES—*Trover Improper Action for Breach of Contract—Case at Bar.*—Defendants, purchasers of certain "fiber containers" from the United States Salvage Board, resold the containers to an agent for an undisclosed principal. The containers were described as being "in storage," and a controversy arose between the parties as to the meaning of the words "in storage." The parties being unable to effect a settlement of their differences, defendants sold all their interest in the containers to a third party and notified the United States officer in charge of the containers of the assignment, and asked the officer to recognize the third party as the proper party to give instructions with reference to any right or interest which they heretofore represented. The third party thereupon notified the officer not to deliver the containers to the plaintiffs; and plaintiffs thereupon instituted a proceeding by notice of motion, sounding in tort, for trover and conversion against defendants.

*Held:* That there being no evidence to show that defendants' assignment of their rights to the third party was bogus for the purpose of escaping responsibility, there was a misconception by the trial court of the issue involved in the transaction; that instead of being a question of whether there had been a conversion, it was a question of whether there had been a breach of contract; and that a judgment for plaintiffs must be reversed and the case remanded.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for plaintiffs. Defendants assign error.

*Reversed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the plaintiffs in error.

*C. M. Chichester* and *Jo Lane Stern,* for the defendants in error. .

CAMPBELL, J., delivered the opinion of the court.

This is a proceeding by notice of motion, sounding in tort, for trover and conversion, instituted by the defendants in error (hereinafter called plaintiffs) against the plaintiffs in error (hereinafter called defendants) to recover the sum of $87,404.25.

There was a verdict for the plaintiffs for the sum of $21,884.18. On the motion of the defendants to set aside the verdict of the jury, the court put the plaintiffs upon the following terms: To remit the sum of $14,884.18, or to submit to the action of the court in setting aside the verdict of the jury and awarding a new trial. Under protest, the plaintiffs remitted the amount stated above, and a judgment was entered by the court against the defendants for the sum of $7,000.00. To this action of the trial court in entering judgment against them, the defendants assign error, while the plaintiffs assign, as cross error, the action of the court in reducing the verdict of the jury from $21,884.18 to $7,000.00.

The controversy in this case is an aftermath of the World War. Defendants purchased from the Richmond Mica Company, which had purchased from the Salvage Board of the War Department of the National Government, 600,000 fiber containers, situated at Seven Pines, Virginia. These containers were, as described in

the notice of motion, "cylindrical receptacles varying from nine to eighteen inches in diameter, and from about two and one-half to three and one-half feet long, made out of a preparation of tar paper, with metal bottoms, and having been manufactured for the War Department of the United States Government for the purpose of packing smokeless powder in silk bags and shipping the same abroad for use in the late war, and usually known and referred to as shell containers."

On the 15th day of January, 1920, defendants sold the shell containers to one Charles J. Green, agent for an undisclosed principal, for the sum of forty-five thousand dollars; thirty thousand cash in hand, and the residue secured by the retention of a lien on the property sold. This contract was assigned to the plaintiffs as alleged in the notice of motion, and is as follows:

"Know all men by these presents, that John L. Williams and Sons, in consideration of forty-five thousand dollars paid by or to be paid by Charles J. Green, agent, or  *  *  assigns the receipt of $30,000.00 whereof is hereby acknowledged, the remainder to be paid as hereinafter provided, but all within one year from date hereof, do hereby grant, sell, transfer and deliver unto the said Charles J. Green, agent, the following goods and chattels, namely, 600,000 (approximately) shell containers *  *  *  now in storage at  *  *  *  and marked as follows:  *  *  *  It is understood and agreed that no interest shall be payable on the deferred part of the purchase price and that the vendors will permit the property sold to remain stored as it is without charge therefor, unless the space shall be commandeered by the United States Government. Also one crimping machine, delivery to be made f. o. b. cars Richmond, Va., freight rate. It is further understood and agreed that the vendors shall retain possession of said property sold

having thereby a lien for the unpaid balance of the purchase price except as follows: The vendees or assigns may withdraw from time to time one-half of said property sold, approximately 300,000 containers, without further payment than the initial payment as above acknowledged, and thereafter the vendees or assigns may withdraw the remaining containers in lots of approximately 50,000 each upon payments of $5,000.00 each. Probate proportion of each one of the four sizes of containers to be delivered in the first 300,000 delivery and in each succeeding delivery.

"To have and to hold all and singular the said goods and chattels to the said Charles J. Green, agent,   *   * and   *   * executors, administrators, and assigns, to their own use and behoof forever.   Anything short of 600,000 containers to be adjusted by abatement of cost at seven and one-half cents each and we hereby covenant with the grantee that   *   *   *   the lawful owner of the said goods, and chattels; that they are free from all encumbrances; upon the default of the buyer in any of his obligations of the contract, the seller shall have the right on ten days' notice by registered mail to take possession of the remaining containers in satisfaction of the balance due.

"That they have good right to sell the same as aforesaid and that they will warrant and defend the same against the lawful claims and demands of all persons *   *   *

"In witness whereof: We, the said John L. Williams and Sons, hereunto set   *   *   hand and seal this fifteenth day of January, in the year one thousand nine hundred and twenty.

"JOHN L. WILLIAMS AND SONS.

"Signed, sealed and delivered in presence of

"F. G. Ross,

"S. LEE DANCE."

It is an undisputed fact in the case that half of the shell containers were stored in metal warehouses, while the other half were stored in sheds covered with tarpaulins. The controversy in this case is as to the proper construction of the term "in storage," contained in the contract.

It is the contention of the plaintiffs that the term "in storage" meant shell containers stored in metal warehouses. The defendants contend that the term meant shell containers stored in metal warehouses and in sheds covered with tarpaulins.

The parties being unable to effect a settlement of their differences, the matter rested until the 15th day of January, 1921, when the defendants sold and conveyed all their right, title and interest in the shell containers to Louis H. Goldsoll, of New York city.

On March 28, 1921, the defendants wrote the following letter:

"RICHMOND, VA., March 28, 1921.

"CAPTAIN FRANCIS,
     "Seven Pines, Virginia.
"Dear Sir:
     "On the 15th day of January, 1920, we sold to Charles J. Green, agent, six hundred thousand shell containers, then in storage at Seven Pines, as will appear from memorandum of sale, a copy of which we hand you with this. Charles J. Green, agent, has failed to pay the residue of the purchase money provided to be paid in said agreement, and we have this day assigned to Louis H. Goldsoll all our right, title and interest in and to the said containers now at Seven Pines and all right and claim which we have against Charles J. Green, agent, under the aforesaid agreement of sale.

"You will please recognize Mr. Goldsoll as the proper party to give instructions with reference to any right or interest which we have heretofore represented.

"Very truly yours,
"(Signed)   JOHN L. WILLIAMS & SONS."

It is upon the contents of this letter and the alleged action of Goldsoll in notifying the government's representative, Captain Francis, not to deliver the containers to plaintiffs, that the plaintiffs base their right of action in trover and conversion.   The allegations of the notice of motion are as follows:

"On or about the 28th day of March, 1921, by letter under date of March 28, 1921, Langbourne M. Williams, Berkeley Williams and E. Lockert Bemiss, who are partners, trading as John L. Williams & Sons, in their partnership names and acting through a duly constituted member of the said partnership, did serve notice upon Captain John W. Francis, the officer in charge at that time of the government reservation at Seven Pines, and with whose knowledge and assent, on behalf of the United States Government, the undersigned were operating and shipping out the converted containers, as aforesaid, to the effect, amongst other things, that he, the said officer in charge, should thereafter take orders in regard to said containers only from a certain Louis H. Goldsoll, to whom the said Langbourne M. Williams, Berkeley Williams and E. Lockert Bemiss, acting as a partnership of John L. Williams & Sons, claimed to have assigned any right or interest which they had in the said containers and thereupon and as a result of the said action of the said Langbourne M. Williams, Berkeley Williams and E. Lockert Bemiss, the said officer did forbid and thereafter prevent the undersigned from making further shipments from the government reserva-

tion, and the said Louis H. Goldsoll cooperated with the said members of the said partnership in directing the said officer to prevent any further shipments by or on behalf of the said undersigned.

"From that time to this, the undersigned have not been permitted to resume the possession, control and enjoyment of said property, which they had previously had, and though they protested against the action of the said members of the said partnership and Louis H. Goldsoll at the time and have since demanded restoration of their possession, control and enjoyment, the same have not been restored and they have been continuously, and still are, deprived of the possession, control and enjoyment of the said containers."

The evidence in the case is voluminous, and several weeks were consumed in the trial thereof.

The assignments of error are four in number, as follows:

"First: The action of the lower court in refusing to set aside the verdict, which was contrary to the evidence, or without evidence to support it, and in refusing to enter judgment thereon.

"Second: The action of the court in refusing to set aside the verdict and grant a new trial.

"Third: The action of the court in giving instructions 3 and 7 over the objection of the defendants and refusing to give instructions G, F, N, H, I, L, and M, asked for by the defendants; and

"Fourth: The action of the court in failing to set aside the verdict on the ground that the damages were excessive, as there was no evidence upon which the amount of damages allowed could be based."

In view of the conclusions reached in the case, it is unnecessary to enter into a detailed discussion of the evidence.

The first question for determination is: Did the plaintiffs, under the evidence as disclosed by the record, have the right to maintain an action of trover and conversion? We are of the opinion that the question must be answered in the negative.

The learned judge of the trial court, in his written opinion filed with the record, says: "It must be borne in mind that while the case was instituted by a motion for judgment, the claim was made as an action of trover and conversion, and the case was conducted throughout the trial as founded in tort upon the conversion of the 300,000 containers in the warehouses at Seven Pines. The case, therefore, is not one for a breach of the contract of sale between the parties. That contract of sale is but a link in the chain of evidence by which the plaintiffs claim to be entitled to the ownership of the containers and by which the defendants claimed their right to them. For the reason that the action was not upon the contract, as well as because the written contract was indeterminate, that portion of testimony, considerable in extent, relating to what was said and done by the parties became admissible, although it was oral testimony."

We cannot subscribe to that view. If a proper construction of the contract entered into between plaintiffs and defendants is as contended for by defendants, then it cannot be denied that they had an absolute legal right to assign and transfer all of their right, title and interest in and to the shell containers to Goldsoll, together with any rights they may have against the plaintiffs under the contract of sale.

As we construe the letter of defendants to Captain Francis, it is in no sense capable of the construction placed upon it by the plaintiffs or by the trial court. It was, at most, but a notice to the agent of the government

who had supervision of the property in question, that in the future he was to treat with Goldsoll, and not the defendants, in regard to the shell containers stored at Seven Pines. It is contended, however, by plaintiffs, that the assignment to Goldsoll was a bogus one, for the purpose of shifting responsibility from defendants to Goldsoll, and that the defendants never parted with their interests in the shell containers, and that the notification of Goldsoll to the government's agent, not to permit the plaintiffs to remove the property, was the fraudulent act of the defendants. If this contention were borne out by the record, we would have to hold that an action of trover and conversion would lie in the instant case. We are unable, however, to find in the record any proof satisfactory to us that warrants the holding that there was a conspiracy existing between Goldsoll and defendants to deprive the plaintiffs of possession of any of the property. From the mass of evidence introduced, we glean what we consider to be the facts of this feature of the case.

On the 13th day of January, 1921, the defendants advised the plaintiffs by letter that they expected payment of the balance due ($15,000.00) on January 15th. Settlement not having been made on that date, defendants notified plaintiffs that they would exercise the right claimed by them under the contract of sale, to retake the containers in settlement of the balance claimed to be due. Negotiations were had and letters exchanged, but the parties were unable to reach a settlement. It was during the pendency of these negotiations that Goldsoll acquired the contract rights of the defendants. By letter dated March 23, 1921, defendants, by counsel, notified counsel for plaintiffs as follows:

"We are now advising you that our clients, Messrs. John L. Williams & Sons, have this day assigned to Louis

H. Goldsoll, of New York, all right and title which they have in the containers stored at Seven Pines and all their rights under the sales agreement with Charles J. Green, agent, dated January 15, 1921."

It was on the latter date that defendants wrote the letter to Captain Francis, *supra.*

Accompanying this letter was a copy of the agreement and assignment to Goldsoll. After securing the assignment, Goldsoll went to Seven Pines and delivered in person a notice to Captain Francis as follows: "Please take notice that, having purchased all right, title and interest in the containers from John L. Williams & Sons, please do not allow any further shipments without authority from me in writing."

On the 30th of March, 1921, counsel for plaintiffs had served on Captain Francis the following notice:

"As counsel for the owners of the containers on storage in the warehouses at Seven Pines, by virtue of a contract dated January 15, 1920, signed by John L. Williams & Sons, we desire to give you the following notice:

"That by a bill of sale executed January 15, 1920, by John L. Williams & Sons, the said containers in storage were sold to Charles J. Green, agent, by said John L. Williams & Sons, who had acquired same from the Richmond Mica Company, which company in turn had bought them from the United States Salvage Board.

"That the present owners under the said contract are in possession through their employe, Charles A. Wilson, and with the knowledge of the sellers and the United States military authorities.

"We are informed that notice has been served upon you by Louis A. Goldsoll or John L. Williams & Sons, or both, to prevent further shipment by our clients, or on behalf of our clients, of the containers or any of them from the government porperty at Seven Pines.

"That our clients do not recognize the right of the said Louis A. Goldsoll or John L. Williams & Sons, or of any one else to interfere with their possession or the exercise of ownership over them.

"That in view of the foregoing, we desire to notify you not to permit the said Louis A. Goldsoll or John L. Williams & Sons, or any other person or persons, except our clients or their agents, to remove any of the said containers or to take possession of or otherwise exercise any act of ownership over any of the said containers in storage in said warehouses."

In regard to the receipt of this notice Captain Francis testifies as follows:

"Q. You received an order from Messrs. Stern & Stern.   You thought it was a court order, did you not?

"A. Yes.

"Q. It was served by the sheriff, was it not, on you?

"A. Yes.

"Q. This order that came from counsel for Messrs. Melendez, Faye & Gano, you received that order the return on which is dated March 30th, and you thought was a court order?

"A. Yes, sir.

"Q. You would not let anybody have any stuff after that order, would you?

"A. No, sir.

"Q. And you thought it was a court order until you got the letter from Messrs. Stern & Stern advising you?

"A. Yes."

The witness further testified that he sent this notice to his superiors, the salvage board, and on April 13th, advised Goldsoll that the question of ownership of the property had been referred to the chief of ordinance for instructions, and until such instructions were received he would not allow the property to be removed.

Nowhere in the record does it conclusively appear that the refusal of Captain Francis, as alleged (to turn over the shell containers to the plaintiffs), was based upon the letter of defendants, nor does it appear that any other action or conduct of defendants impelled him to pursue the course adopted by him.

It is proper to here state that before the trial of this case, Goldsoll, who was also impleaded as a defendant, died, and the action as to him was abated.

The conclusion that the acts of the defendants do not constitute a conversion is sustained by the weight of authority.

In *Harvey* v. *Epes*, 12 Gratt. (53 Va.) 153, one of the questions under consideration was as to the effect of an absolute sale by a term or during the term.    The court in disposing of this question, on page 170, said:

"So far, therefore, as our own decisions go, they tend to show that an absolute sale of personal property by a term or during the term does not work a forfeiture of the term, but is valid to the extent of the vendor's interest; and, therefore, does not amount to a conversion of the property for which trover can be maintained.

"In *Christopher* v. *Langdon & Granger Brewing Co.*, 29 App. Div. 337, 51 N. Y. Supplement 570, the defendant, a brewing company, sold certain liquor to the plaintiff.    The whole purchase price was not paid by the plaintiff, and the defendant assigned his claim against the plaintiff to a third party.    The assignee procured judgment against the plaintiff without serving notice on him, and had execution issued and a levy made on the property of the plaintiff.    Action was instituted against the defendant company for conversion of the plaintiff's property.    It was held that there was no conversion on the part of defendant.    It had merely assigned what claim it had, and was not a party to the

proceeding, whereby judgment against the plaintiff was secured. The opinion, on page 572 (29 App. Div. 340), states:

" 'It appears from the testimony of the bartender, who was present at the time of the levy, that the marshal took the property, locked up the place, and took away the keys. It is conceded that judgments were obtained and executions issued, and that the subsequent levy and sale of the property were acts of the marshal to whom the executions were delivered. The defendant company was not a party to the actions in which the judgments were obtained or the executions issued, nor was it made to appear that the company in any way exercised dominion over the property after the levies under such executions, or that it purchased at the sale; all that appears being that Mortimer, to whom the company had assigned its claim and who obtained the judgments, used the trucks of the brewing company for the purpose of removing the property, which was taken to the brewery premises, and subsequently sold. These circumstances, standing alone, would not justify the inference that the company had converted the property, in the face of the evidence that the acts complained of in taking the property and its subsequent sale were the result of a levy made by the marshal under the Mortimer judgments.' "

To the same effect are the holdings in the cases of *Smith* v. *Texas & N. O. R. Co.*, 101 Tex. 405, 108 S. W. 819; *Hathaway* v. *Brayman*, 42 N. Y. 322, 1 Am. Rep. 524; and *Lafayette County Bank* v. *Metcalf*, 40 Mo. App. 494.

The next assignment of error challenges the action of the trial court in giving and refusing instructions.

From the conclusion herein reached, we do not deem it either essential or advantageous to discuss the assign-

ment in detail.    Suffice it to state that the instructions upon the trial of an issue for alleged breach of contract will necessarily be different in many respects from what they would be on the trial of an issue of trover and conversion.

That the result reached by the jury was not satisfactory to the trial court is made manifest by its action in reducing the damages assessed.

The trial court, in arriving at the amount of the damages awarded, to-wit, $7,000.00, evidently came to this conclusion as a matter of compromise, as is indicated by the opinion filed with the record, from which we quote as follows:

"Now, if we leave out of view all of the evidence except such portions of it as in any way tend to show the value of these containers on March 28, 1921, it is impossible to reach any such result.    It plainly appears that the containers were then not marketable, because no purchasers could be obtained for them.    The plaintiffs were endeavoring to make a portion of them of some value by changing them into small articles for which a market might be made, but considering all the evidence on this subject, this was an experiment, the ultimate result of which was left in great doubt.    Yet, the plaintiffs having prevailed in the action are entitled to substantial damages, which on this motion should be taken to be an amount which the jury might have fixed as the fair value of the containers in question, on the evidence, at the time of the conversion.    And I think that this amount could not in any event have exceeded $7,000.00. This is a case in which I think the duty devolves upon the court of making an estimate of the value, and while the evidence furnishes no exact data from which an accurate estimate can be made, it cannot yet be reasonably concluded that the value should exceed the sum

just mentioned.    It is beyond the province of the court or the jury to afford the plaintiffs here any relief from an unfortunate bargain they may have made on the purchase of the containers, or from the conditions which during a period of a year or more preceding the act of conversion complained of rendered the containers of but small value compared with their cost.    On the other hand—the jury, after hearing all the evidence, has found against the defendants on the questions of the title and ownership of the plaintiff and of the act of wrongful conversion, and it is beyond the authority of the court to interfere with their findings on the merits as to those matters.

. ."My conclusion is, therefore, that the plaintiffs should be required to remit the sum of $14,884.18 from the verdict, so that judgment may be entered for $7,000.00, with interest from the date of the verdict, otherwise the court will set aside the verdict and award a new trial."

Upon the record as presented to us, we are of the opinion that there has been a misconception of the issue involved in the transaction; that instead of this being a proper case in which to try the issue of trover and conversion, it is a case for the trial of the question as to whether or not there has been a breach of the contract entered into by the defendants with Charles J. Green, agent.

For the reasons stated, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded to the trial court to be proceeded with according to law.

*Reversed.*