Present:  All the Justices

SIMBECK, INC.

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 980355                    January 8, 1999

DODD SISK WHITLOCK CORP., ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge

This appeal involving the trucking insurance business is limited to consideration of the following issue:  Did the trial court err in setting aside the jury's verdict for punitive damages?  We conclude that the court was correct, and will affirm.

Appellant Simbeck, Inc., filed a motion for judgment, twice amended, against appellees Dodd Sisk Whitlock Corp. and James H. Dodd seeking compensatory and punitive damages for alleged wrongful business practices in connection with procuring insurance coverage for plaintiff's trucking business.  Plaintiff operates trucks nationwide from its base in Winchester.  The corporate defendant is an insurance agency in Louisa employing the individual defendant, an insurance agent.

The plaintiff sought recovery against defendants on numerous theories.  Following many pretrial rulings, the case was tried to a jury in September 1997 on allegations that defendants were guilty of tortious interference with a business expectancy and breach of fiduciary duties.

During the three-day trial, the jury found in favor of the plaintiff and awarded compensatory damages of $30,000 against both defendants. The trial court reduced this amount to $12,328, the amount of the ad damnum. The jury also awarded punitive damages against the corporate defendant in the sum of $17,700 and against the individual defendant in the sum of $60,000.

The defendants filed motions to set aside the verdicts. Following argument of counsel, the trial court, in a detailed written opinion, denied the motion to set aside the compensatory damage verdict and granted the motion to set aside the punitive damage verdict. The court memorialized these rulings in a November 1997 judgment order, from which we awarded the plaintiff this appeal, limited to the foregoing issue.

When a plaintiff's verdict has been set aside by the trial court, the verdict is not entitled to the same weight upon appellate review as one that has received the trial court's approval. But in considering the facts under these circumstances, the appellate court will accord the plaintiff benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn from it. Commercial Bus. Sys. v. Halifax Corp., 253 Va. 292, 296, 484 S.E.2d 892, 894 (1997).

We shall summarize the pertinent evidence, much of which was conflicting, in accord with the foregoing principles.  In July 1994, plaintiff entered into "an insurance relationship" with the defendants (collectively, the defendant) for defendant to "write" plaintiff's business insurance coverage.  As the result of defendant's efforts, plaintiff entered into a series of insurance contracts with several insurers to provide liability insurance, physical damage insurance, and related coverages (hereinafter, the insurance policy) necessary to conduct plaintiff's business.  The policy remained effective for a period of one year, commencing July 20, 1994.

Defendant was "the retail producer or the seller of insurance" to the plaintiff, the insured.  Also involved in this type of transaction were "intermediaries or wholesalers which were in between the retail insurance producers and the insurance companies."  The wholesaler in this transaction was W. E. Love & Associates, Inc., a North Carolina broker, with whom defendant had a written brokerage agreement.

In early July 1995, as the insurance policy was "coming due for renewal," plaintiff, through its president Ronald Simkhovitch, sought renewal coverage with a number of companies, including Service Insurance Agency, a Richmond "retail insurance agency" and competitor of defendant.  Simkhovitch "indicated that he would like to do business with" Service.  Greg Pohler,

the owner of Service, was aware that defendant had obtained "a quote" for a renewal premium from "Occidental Insurance Company." Service then proceeded to obtain a premium quotation from Occidental.

Because defendant was first in obtaining a "quote" for plaintiff from Occidental, however, "professional courtesy" in the industry entitled defendant to a "10-day hold" on its Occidental quotation. This means that Service, the competing agency, could not write the renewal policy with Occidental until defendant released the "quote" that it previously had obtained for plaintiff from Occidental. Plaintiff's insurance policy was to expire July 20, 1995. This was two days before expiration of defendant's ten-day hold period on the Occidental quotation.

Defendant refused to release the "quote" to Service unless Service agreed to give defendant 50 per cent of its commission and unless plaintiff executed a promissory note payable to defendant, to be personally guaranteed by Simkhovitch, in the sum of $84,000 bearing 10 per cent interest payable over a 30-day period. Plaintiff had been regularly late in submitting premium payments to defendant and owed defendant thousands of dollars, the exact sum being undetermined at that time.

Service agreed to share its commission with defendant but plaintiff refused to execute the note. Because plaintiff apparently would not be able to obtain insurance coverage, and

thus would lack "operating authority," it began "slowing down its operations" on July 19. But at 5:17 p.m. on the 19th, Liberty Mutual Insurance Company, one of the insurers plaintiff had contacted, notified plaintiff it was providing the necessary insurance coverage effective July 20. Thus, plaintiff did not suspend its operations.

Defendant James Dodd, called by plaintiff as an adverse witness, testified defendant's refusal to release the "quote" unless plaintiff executed the note was an effort to put "the squeeze" on plaintiff. Dodd explained that his use of the "squeeze" term as it applied to plaintiff meant he was trying "to get our money that was owed us."

Expert testimony offered by the plaintiff established that defendant's conduct was "totally improper," and a deviation of established custom and practice in the trucking insurance industry. The witness also indicated that defendant owed fiduciary duties as insurance broker to its insured, the plaintiff, which were breached.

On appeal, the plaintiff contends the trial court erred in setting aside the punitive damage award and in entering judgment for compensatory damages only. The plaintiff dwells on the elements of causes of action for tortious interference with a contract and breach of fiduciary duty. Then, plaintiff argues it "introduced testimony of the intentional and improper

5

interference" by defendant with plaintiff's "contractual relationships." It says the evidence supports the conclusion that the defendant's "interference" prevented Service Insurance Agency from entering into "the prospective contract" with the plaintiff and likewise prevented the plaintiff from obtaining insurance coverage through Service. Plaintiff notes that Dodd admitted his actions were meant to put the "squeeze" on plaintiff "despite the fiduciary duty" he owed plaintiff.

Finally, briefly addressing the law on punitive damages, the plaintiff contends defendant's conduct was "not only malicious but it borders on extortion." Plaintiff argues a jury question was presented whether defendant's conduct was "wilful or wanton as to show a conscious disregard for others." It contends the trial court, in deciding the issue as a matter of law, "deprived the jury of its responsibility to analyze the facts and its verdict should be reinstated." We do not agree.

The broad rule governing the award of punitive damages, the purpose of which is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, is that such damages may be recovered only when there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another. Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 45, 445 S.E.2d 140, 143 (1994). Accord Webb v. Rivers, 256 Va. ___, ___, ___ S.E.2d ___, ___

6

(1998); Smith v. Litten, 256 Va. ___, ___, ___ S.E.2d ___, ___ (1998). Under the allegations in this case of interference with a business expectancy and breach of fiduciary duty, however, punitive damages may be awarded only if the acts are done with malice or wantonness. Smith v. Litten, 256 Va. at ___, ___ S.E.2d at ___. See Worrie v. Boze, 198 Va. 533, 543, 95 S.E.2d 192, 200 (1956).

Awards of punitive damages are not favored generally because they are in the nature of a penalty and should be assessed "only in cases involving the most egregious conduct." Bowers v. Westvaco Corp., 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992). This is not a case involving egregious conduct.

Of course, the jury's finding of compensatory damages, confirmed by the trial court, is a determination that defendant was guilty of both tortious interference with a prospective contract and a breach of fiduciary duty. The plaintiff established the elements of the former cause of action, i.e., that plaintiff had a contract expectancy of which defendant knew; that defendant intentionally interfered with the expectancy by using improper means or methods; and that plaintiff suffered loss. See Maximus, Inc. v. Lockheed Info. Management Sys. Co., 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997).

The plaintiff's losses resulting from its "slowing down of operations" on July 19 were reflected in the compensatory damage award. But awarding plaintiff damages for interference with a contract expectancy and for breach of fiduciary duty does not ipso facto support an award of punitive damages, as the plaintiff seems to argue. Rather, as we have said, under these circumstances there must be malicious or wanton conduct.

According the plaintiff benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn from it, we conclude the trial court correctly ruled there was no evidence of acts done with malice or wantonness. As the trial court noted, the defendant violated unwritten trade customs or ethical practices in the trucking insurance business in an effort to make the plaintiff pay a debt owed to defendant. The defendant requested plaintiff to execute a note for an underlying debt and refused to release an insurance "quote," both of which were lawful acts, in an effort to make plaintiff pay defendant the sum it owed. If Simkhovitch had executed the note, plaintiff would have suffered no loss.

The plaintiff argues the amount of the note, $84,000, "bore no resemblance to the amount demanded by [defendant] for payment. In fact, it was admitted by the [defendant] at trial that the debt paid was approximately $25,000." This is not an accurate summary of the evidence.

8

Instead, the evidence shows that, based upon defendant's records, defendant reasonably believed plaintiff owed it more than $76,000 when the note was presented for Simkhovitch's signature. Because of the provisions of the brokerage agreement between defendant and W. E. Love, the North Carolina broker, defendant was liable to Love for plaintiff's insurance premiums, whether or not plaintiff paid defendant. At the time the note was presented for signature on July 18, 1995, the amount due defendant could only be estimated because no policy audits had been conducted, and because plaintiff, without defendant's knowledge, had made some premium payments directly to Love and Love had not credited defendant's account. Thus, defendant was confronted not only with large sums due it from plaintiff, but also with a possible debt due from defendant to Love on account of plaintiff's failures. In a letter attached to the note, however, defendant said the amount was only "an estimated figure" and that when "we get the exact amount and audits are completed, we can then give credits . . . ."

In August 1995, defendant sued plaintiff in the Circuit Court of Louisa County for approximately $76,000 for unpaid premiums due on the 1994-1995 insurance policy. Following completion of the audits and when the exact amount due was determined, the Louisa action eventually was settled for $25,000 in July 1996.

In sum, an accurate and complete review of the evidence shows that defendant's attempt to collect a debt due it by plaintiff by putting "the squeeze" on plaintiff was not malicious or wanton, but merely an act of commercial "hard ball." Consequently, we hold the trial court did not err in concluding that, while defendant's violations of trade standards were the basis of both the tortious interference and breach of fiduciary duty rights of action, such violations were insufficient as a matter of law to justify imposition of punitive damages.

Thus, the trial court acted properly in setting aside the punitive damage verdict, and the judgment below will be

Affirmed.