# CIRCUIT COURT OF THE CITY OF ROANOKE

Wachovia Bank, N.A.

v.

Ranson Tyler Chevrolet, L.L.C.,
Kevin Tyler,
and J. Michael Ranson

March 27, 2007

Case No. CL05000199-00

BY JUDGE CHARLES N. DORSEY

This matter is before the Court on Wachovia Bank's ("Wachovia") demurrers to an Amended Counterclaim filed by Michael Ranson and Ranson Tyler Chevrolet, L.L.C. ("the Dealership"). For the following reasons, Wachovia's demurrer to dismiss Ranson from Count Two of the Amended Counterclaim is sustained. Wachovia's demurrers to dismiss Counts Four and Five of the Amended Counterclaim are also sustained. All of Wachovia's remaining demurrers to the Amended Counterclaim are overruled.

## I. *Facts and Procedural Disposition*

This action arises from a commercial financing agreement entered into between Wachovia, Ranson, Kenneth Tyler, and the Dealership on May 9, 2003. Compl. Ex. A ("May 2003 Agreement"). The agreement was for the purpose of securing financing for the new Dealership and for resolving differences relating to previous dealership financing relationships. As part of the agreement, Wachovia limited Ranson's liability for all previous financing arrangements to a Limited Guaranty of $500,000. Under the agreement, Ranson was not to be held liable for the guaranty amount if Wachovia terminated its financing of the Dealership without cause and the Dealership was in compliance with the minimum expectations set forth in the agreement.

The Dealership subsequently failed. Wachovia filed suit to collect on amounts allegedly owed by Ranson, Tyler, and the Dealership. Ranson and the Dealership, collectively, filed responsive pleadings, including a counterclaim and Amended Counterclaim. Wachovia filed a Demurrer to the Amended Counterclaim, asking the court to:

(1) Dismiss Ranson from the breach of contract, intentional interference with contract, and intentional interference with expectancy counterclaims;

(2) Dismiss the breach of contract claim because the implied duties were inapplicable;

(3) Dismiss the breach of contract claim because no breach existed;

(4) Dismiss the intentional interference with contract claim;

(5) Dismiss the intentional interference with business expectancy claim;

(6) Dismiss the tortious or wrongful repossession/conversion claim;

(7) Dismiss the fraud claim because of a failure to plead with specificity;

(8) Dismiss the fraud claim because implied misrepresentations were insufficient; and

(9) Dismiss the punitive damages claim.

It is upon these demurrers that the Court is now prepared to rule.

## II. *Standard of Review*

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. We accept as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from these facts." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589 (2003) (citations omitted). When considering a demurrer, the trial court cannot

evaluate and decide the merits of a complaint, but may only determine whether the factual allegations are sufficient to state a cause of action. *Riverview Farm Associates, Virginia Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99 (2000).

"To survive a challenge by demurrer, a pleading must be made with `sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action'." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 123, 624 S.E.2d 1 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440, 158 S.E.2d 124 (1967)).

### III. *Analysis*

#### A. *Demurrer 1: Dismissal of Counterclaims Asserted by Ranson*

##### 1. *Breach of Contract Counterclaim*

Wachovia first argues that Ranson's breach of contract counterclaim should be dismissed because Ranson was not a party to some of the agreements at issue. Ranson claims, and the record shows, that he was a party to the May 2003 Agreement. Ranson also claims that he is a third-party beneficiary of the underlying financing documents, explaining that the agreements were entered into "with the intention of allowing Mike Ranson to protect his personal estate. . . ." Ranson Am. Countercl. ¶ 40. Additionally, Ranson asserts, he was a guarantor of the underlying financing documents. While some of Ranson's assertions have no bearing on the issue, Ranson has alleged sufficient facts to establish that he is a proper party to the Dealership's breach of contract counterclaim.

A shareholder, as an individual, cannot bring an action for injuries to a corporation. *Simmons v. Miller*, 261 Va. 561, 573, 544 S.E.2d 666 (2001). Balanced with this rule, however, is the general proposition that a party who has a personal stake in the outcome of a controversy has standing to request relief. *Goldman v. Landsidle*, 262 Va. 364, 371, 552 S.E.2d 67 (2001). Ranson has alleged that Wachovia breached the May 2003 Agreement, and that he was a party to that agreement. Therefore, Ranson clearly has standing to claim that Wachovia has breached that agreement.

Ranson has also implied, by alleging his status as third-party beneficiary and guarantor of the underlying financing documents, that he should be allowed to recover personally for Wachovia's alleged breach of those agreements. In general, "when a creditor sues a guarantor and does not

name the principal debtor in the action, the guarantor is not entitled to raise defensively the claims of the principal debtor against the creditor." *First Texas Serv. Corp. v. Roulier*, 750 F. Supp. 1056, 1060 (D. Colo. 1990). The purpose of this rule is to protect the interests of the principal and minimize litigation. *See Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 402 (6th Cir. 2000). While the Virginia Supreme Court has not spoken directly to the issue, courts in other jurisdictions almost uniformly allow counterclaims by guarantors if, as here, the principal is a party to the action. *See, e.g., Wallace Hardware Co., supra; Roulier, supra; Bloor v. Shapiro*, 32 B.R. 993, 1001 (S.D. N.Y. 1983); *Restatement, Security* § 133(2) (1941). Because the Dealership is a party to this action, its interests are adequately protected. Ranson has sufficiently shown standing as guarantor to allege a breach of contract counterclaim.

Additionally, if Wachovia has in fact breached its agreement, as Ranson alleges, such a breach would arguably relieve Ranson of any obligations as a surety to the agreement. The Supreme Court of Virginia has stated that "any change in the contract, however immaterial, and even though it be for his advantage, discharges the surety, if made without his consent." *Citizens' & Marine Bank v. McMurran*, 138 Va. 657, 662, 123 S.E. 507 (1924).

The Virginia General Assembly has provided that a third-party beneficiary of an agreement may maintain an action based on the contract. *See* Va. Code § 55-22. The third party must first establish, however, that "the parties to the contract clearly and definitely intended to confer a direct benefit upon him." *Kelley v. Griffin*, 252 Va. 26, 29, 471 S.E.2d 475 (1996). The party must be more than a "mere incidental beneficiary." *Id.* In the present case, Ranson has alleged not only that the parties considered him when entering into the financing documents, but that they did so with the intention of allowing him to satisfy his creditors (including Wachovia) while protecting his personal estate. Although it is by no means clear whether it will be proven that the parties intended to confer a direct benefit upon Ranson, Ranson has alleged sufficient facts at this stage.

While neither party has brought it to the Court's attention, the Wholesale Loan Agreement entered into by Wachovia and the Dealership clearly contains language stating, "The parties hereto do not intend the benefits of this Agreement to inure to any third party." Compl. Ex. D. A court considering a demurrer "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equipment v. New Holland*, 254 Va. 379, 382, 493 S.E.2d 516 (1997). While the Wholesale Loan Agreement contains language refuting a third-party claim, significantly no other agreements in the record

contain such language. As Ranson alleges sufficient facts that would support a breach of contract claim, then, Wachovia's first demurrer is overruled as to Count One of the Amended Counterclaim.

## 2. *Intentional Interference with Contract Counterclaim*

Wachovia next argues that Ranson cannot personally assert a claim for intentional interference with the GM franchise agreement. To make out such a claim in Virginia, Ranson must show "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985).

Here, the franchise agreement in question was between GM and the Dealership. While Ranson may have been affected by an alleged interference with the agreement, he was not a party to the agreement and thus could not have incurred damage from a nonexistent contractual relationship. He has not alleged that he was a third-party beneficiary. The Supreme Court of Virginia has stated that limiting the rights of shareholders on claims that belong solely to a corporation prevents a multiplicity of lawsuits, protects corporate creditors, and better protects the interests of all shareholders. *See Simmons*, 261 Va. at 574. Consequently, this portion of Wachovia's first demurrer is sustained and Ranson is dismissed as a party to Count Two of the Amended Counterclaim.

## 3. *Intentional Interference with Business Expectancy Counterclaim*

Wachovia next argues that Ranson's individual claim for intentional interference with a business expectancy should be dismissed, noting that the claim is "based upon the alleged potential sale of [the Dealership]." Dem. 2. It is not the subject of the alleged potential sale, however, that bears upon Ranson's standing so much as whether Ranson has alleged a valid business expectancy of his own. Ranson has done so. He has alleged that Jeff Johnson, a potential purchaser of the Dealership, had "tendered an Intent to Purchase [to Ranson] which was pending as of October 1, 2003." Ranson Am. Countercl. ¶ 51. He has alleged that the proposed terms of sale had been reduced to writing. Although he did not reference it, Ranson has included a

"Letter of Intent" as an exhibit,[1] which lists his name, as well as that of Jeffrey and Sharon Johnson, and sets out proposed terms of sale. Ranson has alleged a "personal stake in the outcome" sufficient to withstand Wachovia's demurrer. This portion of the demurrer is accordingly overruled.

### B. *Demurrer 2: Dismissal of Breach of Contract Counterclaim — Implied Duties Inapplicable*

Wachovia's second demurrer requests that Count One of the counterclaim be dismissed because the duty of good faith does not apply to the transaction in question. While the counterclaim asserts that the duty applies as a result of the agreement in question being a secured transaction, Wachovia disputes that it is in fact a secured transaction. As Ranson has alleged that the transactions are secured transactions,[2] he has sufficiently alleged that the implied duty of good faith is applicable. Thus the second demurrer is overruled.

"Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Va. Code § 8.1A-304. Secured transactions, covered by Va. Code § 8.9A-101 et seq., are contracts within the U.C.C. While the term "secured transaction" is not defined in the Code, a "security agreement" is defined as "an agreement that creates or provides for a security interest." Va. Code § 8.9A-102(a)(73). Deconstructing the definition further, the Code defines an "agreement" as "the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade. . . ." Va. Code § 8.1A-201(b)(3). A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation. . . ." Va. Code § 8.1-201(37). According to the Official Comment, "Whether an agreement creates a security interest depends not on whether the parties intend that the law *characterize* the transaction as a security interest but rather on whether the transaction falls within the definition of 'security interest'. . . ." Va. Code § 8.9A-102, cmt. 3(b). Applying these definitions to the facts, Ranson has sufficiently alleged that the transactions discussed in Count One of the counterclaim form the "bargain of the parties in fact," and provide for Wachovia's interest in personal property in exchange for financing arrangements.

---

[1] *See* Ranson Am. Countercl. Ex. B ("Letter of Intent").

[2] Ranson Am. Countercl. ¶ 38.

Wachovia further argues that, even if the transaction is a secured transaction, the duty of good faith is inapplicable, citing *Ward's Equipment v. New Holland*, 254 Va. 379, 385, 493 S.E.2d 516 (1997). Wachovia states that, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights. The case on which Wachovia relies does not apply to the breach of contract claim for the reasons cited below.

The duty of good faith, under the U.C.C., is the duty to exercise "honesty in fact and the observance of reasonable commercial standards of fair dealing." Va. Code § 8.9A-102(a)(43). In *Ward's Equipment*, the Supreme Court stated that the duty of good faith "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equipment*, 254 Va. at 385. Likewise, in *Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 466 S.E.2d 382 (1996), the court found that a party cannot breach an implied covenant of good faith if it "did nothing more than exercise its rights provided in the loan documents and under the applicable law. . . ." *Id.* at 35.

Unlike these cases, however, the claim for breach of contract here alleges certain actions by Wachovia that fall outside of the rights explicitly provided. Ranson and the Dealership allege that Wachovia illegally seized collateral. Ranson Am. Countercl. ¶ 37. They allege that Wachovia refused to loan money to its own customers to purchase vehicles from the Dealership. *Id.* ¶ 23. They also allege that Wachovia "refused to floor used vehicles for an amount in accord with commercially reasonable and prevailing standards." *Id.* In doing so, according to the counterclaim, Wachovia acted "for the purpose of forcing Mike Ranson, individually, to pay the remaining balance of the $500,000.00 limited guarantee amount." *Id.* ¶ 38. While the duty of good faith cannot contradict unambiguous rights, "a party may not exercise contractual discretion in bad faith." *Virginia Vermiculite, Ltd. v. W. R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) (interpreting Virginia contract law). The Amended Counterclaim alleges more than the mere exercise of contractual rights. Consequently, Wachovia's second demurrer is overruled.

C. *Demurrer 3: Dismissal of Breach of Contract Counterclaim — No Breach of Contract*

Wachovia's third demurrer seeks to dismiss the breach of contract claim, arguing that the terms of the May 2003 Agreement and the underlying financing agreements do not set forth any duty or obligation of

Wachovia that would support such a claim. As described above, however, Ranson and the Dealership have sufficiently alleged a breach of the implied duty of good faith.

Additionally, Ranson and the Dealership have alleged a breach of the very terms quoted by Wachovia in its demurrer; paragraph 7 of the May 2003 Agreement states that "Wachovia may demand payment of such obligation in full at any time. In the event demand is made, [the Dealership], Michael Ranson, and Tyler agree to immediately permit Wachovia to take possession of the vehicles on which Wachovia has a lien. . . ." Ranson and the Dealership allege that Wachovia attempted to repossess the vehicles without demanding payment of its obligations. Taking this allegation as true for present purposes, the Amended Counterclaim alleges sufficient facts to support a breach of contract claim. Wachovia's third demurrer is therefore overruled.

D. *Demurrer 4: Dismissal of Intentional Interference with Contract Counterclaim*

Count Two of the amended counterclaim alleges that Wachovia interfered with the Dealership's franchise agreement with GM. Wachovia's fourth demurrer argues that this claim should be dismissed. The Dealership[3] has failed to allege, Wachovia argues, that Wachovia induced GM to breach its franchise agreement. Further, the demurrer argues, Wachovia had a contractual right to terminate the Dealership's financing at any time and thus that action cannot form the basis of the Dealership's claim. After consideration of the parties' positions, the fourth demurrer is overruled.

For purposes of this demurrer, it is assumed that the agreement between the Dealership and GM was terminable at will by either party. It should be noted at the outset that "the fact that a contract is terminable at the will of the parties does not make it terminable at the will of others." *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832 (1987). The requisite elements for a showing of a tortious interference with a contract are:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or

---

[3] As the Court has sustained Wachovia's demurrer to dismiss Ranson from Count Two, the discussion here will not refer to Ranson as a party to that claim.

causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Id.* at 226 (quoting *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).

In addition, a plaintiff alleging intentional interference with an at-will contract or contractual expectancy must also allege that the defendant employed "improper methods." *Id.* at 226-27. "Methods considered `improper' include those that are illegal or independently tortious." *Id.* at 227. In dicta, the Supreme Court in *Duggin* gave a litany of examples of improper methods, including those that "violate an established standard of a trade or profession, . . . [s]harp dealing, overreaching, or unfair competition." *Id.* at 228. The Supreme Court reiterated, this time as part of its decision, that " `[t]ortious interference' means only that the interference was intentional and improper under the circumstances, not that the `improper methods' used were inherently illegal or tortious." *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375 (1997) (finding that the plaintiff's assertion that defendant made defamatory statements was sufficient to state a cause of action for tortious interference with a contractual expectancy, even though the defendant may have had a qualified privilege to make such statements); *see also Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 210, n. 11, 582 P.2d 1365 (1978) (plaintiff claiming intentional interference need not allege all elements of an independent tort) (cited with approval in *Duggin*, 234 Va. at 227).

In the present case, the Dealership has alleged that Wachovia informed GM that Wachovia had terminated the financing arrangement "as part of its campaign against the interests of [the Dealership]." The Dealership further alleges that its franchise was revoked as a "direct and proximate result" of Wachovia's termination of the financing arrangement and communication with GM. Ranson Am. Countercl. ¶¶ 44-45. If these factual allegations are accepted as true, which they must be, then the counterclaim sufficiently alleges intentional interference causing a breach or termination of the relationship between GM and the Dealership.

The Dealership does not allege that Wachovia's contact with GM was improper. Rather, the Dealership alleges that the financing termination was improper; according to the counterclaim, it was a violation of established standards of a trade, a tortious conversion, and in furtherance of fraud. *Id.* ¶ 47. Again accepting the counterclaim's allegations as true, the Court must find that it sufficiently alleges improper methods. *See also Simbeck, Inc. v. Dodd*

*Sisk Whitlock Corp.*, 257 Va. 53, 508 S.E.2d 601 (1999) (approving a jury's finding that a violation of "unwritten trade customs or ethical practices" established tortious interference with a contractual expectancy). Therefore, Wachovia's fourth demurrer is overruled.

E. *Demurrer 5: Dismissal of Intentional Interference with a Business Expectancy Counterclaim*

Wachovia's fifth demurrer moves to dismiss Ranson and the Dealership's claim that Wachovia intentionally interfered with the sale of the Dealership to a third party. According to the demurrer, "Wachovia could not have unlawfully interfered with the sale . . . by lawfully doing what it by right under the financing agreement was permitted to do." Dem. 5. Echoing Count Two of the counterclaim, Ranson and the Dealership have again alleged in Count Three that Wachovia used improper methods in terminating the financing arrangement. The alleged improper methods are the same as those alleged in Count Two. As the positions on both sides are in essence identical to those concerning Wachovia's fourth demurrer, the Court overrules Wachovia's fifth demurrer as well.

F. *Demurrer 6: Dismissal of Tortious or Wrongful Repossession/Conversion Counterclaim*

Count Four in Ranson and the Dealership's amended counterclaim alleges that Wachovia committed wrongful conversion of property when it seized possession of "vehicle keys and MSO's and removed them from the premises of the dealership." Ranson Am. Countercl. ¶ 59. Wachovia counters, in its sixth demurrer, that "the rights and duties of [the Dealership] and Wachovia with respect to the seizure/repossession of collateral are controlled by the financing agreements." Dem. 5. For the reasons stated below, Wachovia's demurrer is sustained and Count Four of the Amended Counterclaim is dismissed.

Courts have long struggled to maintain a separation between actions in tort and those in contract. As the Supreme Court of Virginia has stated:

> The law of torts is well equipped to offer redress for losses suffered by reason of a breach of some duty imposed by law to protect the broad interests of social policy. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type

of compensation necessitates an analysis of the damages that were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55 (1988).

When faced with parties in privity, Virginia's Supreme Court allows claims sounding in both tort and contract but looks to whether there existed "a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344 (citing *Foreign Mission Bd., v. Wade*, 242 Va. 234, 409 S.E.2d 144 (1991)). In *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 509 S.E.2d 494 (1999), the court stated that, for the plaintiff to sustain a negligence action against the defendant, "she must identify a common law duty owed by Sunrise to her, which arose separate and apart from any duty imposed by Sunrise's contract. . . ." *Id.* at 136.

The Supreme Court has suggested that conversion is an improper action in a breach of contract case, absent fraudulent possession of the property. *See Williams v. Melendez, Gano, and Faye*, 141 Va. 370, 127 S.E. 82 (1925). The court, more recently, has affirmed the distinction between tort and contract claims in holding that, "[i]n determining whether a cause of action for fraud sounds in contract or tort, and the damages that will arise therefrom, the source of the duty to abstain from making the fraudulent representation must be ascertained." *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 112, 540 S.E.2d 134 (2001); *see also Filak v. George*, 267 Va. 612, 618-19, 594 S.E.2d 610 (2004) ("The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society.").

Significantly, Ranson and the Dealership allege Wachovia's wrongful repossession as part of both their breach of contract claim and their conversion claim. Virginia's contract law is adequately equipped to weigh and apportion damages that may be consequential to a breach, such as reduced sale value of vehicles. For at least 150 years,[4] courts have applied a common law principle

---

[4] *See Hadley v. Baxendale*, 9 Ex. 341 156 Eng. Rep. 145 (1854) (allowing recovery for consequential damages in English courts). This rule of law has existed in some form since at least the Napoleonic Code. *See Sinclair Ref. Co.*, 164 Va. at 209.

that damages recoverable for a breach of contract are those that "may fairly and reasonably be considered as arising naturally" from the breach itself. *Sinclair Ref. Co. v. Hamilton & Dotson*, 164 Va. 203, 209, 178 S.E. 777 (1935). This includes damages that may reasonably have been contemplated by the parties at the time the contract was entered into. *Id.*

In this case, the instant counterclaim for damages arising from wrongful conversion is little more than a claim for damages arising from a breach of contract. As the agreement in question contains provisions for Wachovia's immediate repossession of the Dealership's vehicle inventory[5] and for terminating financing with or without cause,[6] the damages arising from the alleged seizure were within the contemplation of the parties when entering into the agreement. Accordingly, Wachovia's sixth demurrer is sustained and Count Four of the Amended Counterclaim is dismissed.

## G. *Demurrers 7 and 8: Dismissal of Fraud Counterclaim*

Count Five of the Amended Counterclaim alleges that Wachovia impliedly represented that it would perform in good faith. This, according to the Counterclaim, was a fraudulent misrepresentation of a material fact existing at the time their agreement was entered into. Wachovia argues, in its seventh demurrer, that the Counterclaim fails to allege fraud with the required specificity. In its eighth demurrer, Wachovia argues that Count Five should be dismissed because the "implied misrepresentation" is not false and is insufficient to support a claim for fraud. For the following reasons, both demurrers are sustained.

"To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Yuzefovsky*, 261 Va. at 112. Additionally, the "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Id.* (quoting *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940)).

As Wachovia correctly states in its demurrer, fraud must be alleged with particularity, "so that the defendant may have the opportunity of shaping his defense accordingly, and since [fraud] must be clearly proved it must be

---

[5] *See* Compl. Ex. A, ¶ 7.

[6] *See id.*, ¶ 9.

distinctly stated." *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778 (1996) (quoting *Ciarochi v. Ciarochi*, 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952)).

Here, Ranson and the Dealership base their claim of fraud on a "representation as to Wachovia's then existing intentions" that it would act in good faith. Ranson Am. Countercl. ¶¶ 63-64. Even in the light most favorable to the counter-plaintiffs, this is not a factual misrepresentation, but merely improper intent. Further, while the Counterclaim explains in a minimum of detail what the implied representation was, it fails to state when, how, or by whom such representation was made. Conclusory statements cannot support a claim that must be pleaded with particularity, even on a demurrer. Therefore, Wachovia's demurrers relating to Ranson and the Dealership's fraud claims are sustained. Count Five of the Amended Counterclaim is dismissed.

## H. *Demurrer 9: Dismissal of Counterclaim for Punitive Damages*

Wachovia's ninth and final demurrer moves to dismiss Ranson and the Dealership's request for punitive damages. Wachovia states that the Counterclaim fails to allege an independent, willful tort sufficient to give rise to punitive damages. Each of the counts asserted by Ranson and the Dealership arise from contractual relations, Wachovia asserts. After considering the arguments carefully, and in light of the rulings above, this Court overrules the demurrer.

An award of punitive damages is grounded not so much in compensating the plaintiff but in punishing the wrongdoer and in warning others. *Simbeck, Inc. v. Dodd Sisk Whitlock Corp.*, 257 Va. 53, 58, 508 S.E.2d 601 (1999). Such damages "may be recovered only when there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another." *Id.* Punitive damages may be recovered in a breach of contract action only if there exists an independent, willful tort, regardless of the motives underlying the breach. *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514 (1983).

When alleging intentional interference with contractual relations, punitive damages may be awarded if the acts are done with malice or wantonness. *Simbeck*, 257 Va. at 58; *Worrie v. Boze*, 198 Va. 533, 543-44, 95 S.E.2d 192 (1956) ("[T]he willful and unauthorized destruction of one's business is ground for imposition of punitive damages against the wrongdoer."). Count Two of the Amended Counterclaim alleges intentional interference with a business contract. Count Three alleges intentional interference with a business expectancy. Both are intentional torts,

independent of any alleged breach of the agreements between Wachovia, Ranson, and the Dealership. In both cases, the Counterclaim alleges that Wachovia's actions were "willful, wanton, and intentional." Ranson Am. Countercl. ¶¶ 48, 56. Therefore, Ranson and the Dealership have pleaded sufficient facts that would support a claim for punitive damages. As to these Counts, then, Wachovia's demurrer is overruled. In light of the rulings above dismissing Counts Four and Five of the Amended Counterclaim, the Court need not further address those claims.

## IV. *Conclusion*

For the reasons stated, Wachovia's demurrer to dismiss Ranson from Count Two of the Amended Counterclaim is sustained. Wachovia's demurrers to dismiss Counts Four and Five of the Amended Counterclaim are also sustained. All other demurrers to Ranson and the Dealership's Amended Counterclaim are overruled. Leave is granted to Ranson and the Dealership to amend their Counterclaim, in furtherance of the ends of justice.